BARBARA D. CAMERON *v.* GENE CAMERON

SPEZIALE, C. J., PETERS, HEALEY, ARMENTANO and SHEA, Js.

Argued February 9—decision released May 18, 1982

---

*Warren P. Joblin,* for the appellant (defendant).

*Barbara S. Miller,* with whom, on the brief, was *Frederick A. Freedman,* for the appellee (plaintiff).

SHEA, J. In this appeal from a judgment dissolving the marriage of the parties the defendant has raised several issues relating generally to the division of property and the financial awards. The only question we shall consider, however, is whether the trial judge sua sponte should have declared a mistrial after an altercation arose with trial counsel. Our conclusion that such action was essential makes it unnecessary to consider those issues relating to the merits of the decree of dissolution.

The subject of the litigation was a fairly routine dissolution action in which neither party blamed the other for the breakdown of the marriage, which they agreed was irretrievable. They had been married for five years. There were no children of the marriage. Both parties were employed, the wife as a school teacher and the husband as the captain of an ocean-going ship.

After a minor skirmish over an inaccurate affidavit,[1] a controversy eventually developed at the trial over a claim made by counsel for the plaintiff that the defendant's affidavit did not include $4000 in cash which he had testified during a deposition taken on December 8, 1980, was in an attache case at his home. When counsel for the defendant

---

[1] The court noticed that the defendant's financial affidavit incorrectly stated that his net earnings were approximately $3000 per week instead of $3000 per month and remarked to counsel for the defendant, "[y]ou are penalizing your client by telling me he makes $150,000 a year." Counsel acknowledged the error and it was corrected with a further comment by the court: "You should have straightened that out counsel."

explained that the $4000 was shown in the affidavit as savings bank deposits, the court proceeded to demand that a confirming deposit slip be produced and stated further: "If not, counselor, either you or your client is in serious trouble in perpetrating or attempting to perpetrate a fraud upon this Court." Counsel asked whether the court was alluding to his involvement. The court replied, "I said, either you or your client."

After the court ordered that the case be continued until the next day, counsel for the plaintiff mentioned that the defendant was scheduled to leave for sea very soon and might be called at any moment and he requested that the defendant be instructed to appear in court when the trial resumed. The court responded, "[t]omorrow at 11:00 o'clock with the deposit slip. That's the order of this Court, under the compulsion of this Court, Mr. Joblin, and you have had trouble with this Court before in some of your clients absconding—now, just let me finish. You can get on the record all you want. I don't want that to happen in this case. I want that man here tomorrow at 11:00 o'clock. Now, put on the record all you want." Counsel for the defendant then stated that he had never done anything unprofessional "before your Honor or any other Judge." The court responded, "[t]hat's questionable." Counsel then charged that the court was evidencing "an obvious personal bias" against him, an accusation which the court denied. The rather heated dialogue contained in the footnote[2] then

---

[2] "MR. JOBLIN: I am just trying to make the claims that Your Honor has evidenced today in what I feel to be a personal bias towards me as an attorney, that I feel that it is affecting my client's ability to have a hearing here today before you. I feel that, Your

transpired in which the court several times stated that the defendant had lied under oath.

The next morning when the trial resumed the defendant produced a deposit slip on which the date stamped by machine had been crossed out and an earlier date written in ink above with initials. The court said that the matter could be checked by an

Honor, and I am sure my client may feel that also. I feel, Your Honor, that that is an unfortunate situation, that you and I, regardless of our personal feelings for each other, should do our best to keep our personal feelings out of our clients—or citizens of this state's ability to come before Your Honor, represented by whoever they may choose to be represented by and feel that their attorney is being fairly heard and they are being adequately represented before Your Honor.

"I only point out, Your Honor, that what has transpired here today, I think, has really damaged Mr. Cameron's ability to feel that he is getting a fair hearing.

"THE COURT: Because he has lied under oath.

"And let the record be clear there, he has ostensibly lied under oath and this Court is adamant, irritated, and I should—not with you, counselor. Nothing occurred prior to the time that it came to the attention of this Court that somebody had lied to the Court under oath. And the record will disclose that the Court became most angry and—I am, at this time, angered at the fact that he would lie under oath to this Court.

"You're not involved in it all, counselor. Don't flatter yourself. I'm angered at his lying under oath and I want an answer tomorrow morning.

"MR. JOBLIN: I would just point out that there's been no fact introduced yet before Your Honor by which Your Honor could find that he has, in fact, lied under oath. But Your Honor has already drawn that and made that as a finding and drawn a conclusion.

"THE COURT: Let me say this to you: When he has time to explain it tomorrow—in a deposition on December the 8th, he said he had $4,000 in cash in an attache case in his home.

"On December 9, you claim that that's the same $4,000 in the bank. I say, show me a deposit slip, because I think somebody has not told the truth. It's an easy inference to make and if there is a lie that has been committed, then I say to you and I say to you again, someone is in serious trouble, that they would have the audacity to lie under oath to this Court and that's all I'll say.

"We'll see you tomorrow morning at 11:00 A.M."

investigator from the office of the state's attorney but also expressed the view that the slip had been "tampered with." The court asked counsel for the defendant about an initial on the slip and when counsel refused to answer the question but insisted on making a statement he was found in contempt of court and fined $100. A heated argument occurred at this point which is recited in the footnote.[3]

The court then invited the defendant, who had not testified at the trial previously, to take the witness stand. After he was sworn as a witness and had given his name and residence, the defendant was addressed by the court in the following fashion: "You are held in contempt of this Court." When the defendant's subsequent testimony conflicted with the report of the investigator who had been requested to explore the matter, the court indicated that no perjury charge would be presented against the defendant but observed that it still entertained some reservation about the defendant's credibility.

---

[3] "MR. JOBLIN: Your Honor is raising his voice to me again.

"THE COURT: My voice is raised because you are discourteous and contemptuous of this Court and you will not answer my question.

"You made a statement, that there's an initial here of a bank officer. I'm asking you to identify it.

"MR. JOBLIN: I'm trying to explain to Your Honor.

"THE COURT: Identify that.

"MR. JOBLIN: Your Honor, I cannot identify that.

"THE COURT: You made a representation to this Court that this was deposited on the 8th and I see it in ink and not on the stamp of the bank.

"MR. JOBLIN: Your Honor, my client told me that and I am telling you what my client told me.

"THE COURT: Well, you didn't say that when you started. Now you're telling me your client is a liar.

"MR. JOBLIN: No, Your Honor, I am not.

"THE COURT: Now, through this transcript of yesterday, you said certain things. And, then, when it got heated, you said your client told you. You are hiding behind your client's cloak."

At the conclusion of the trial the court stated its reluctance to pursue the contempt charge against counsel for the defendant and vacated its judgment of contempt after receiving his apology.

We would not ordinarily review on appeal a claim that a trial judge should have disqualified himself or declared a mistrial at a certain stage of the proceedings when no such request was made during the trial. Practice Book § 3063. Even where a proper ground for disqualification exists, it must be asserted seasonably or it will be deemed to have been waived. *Krattenstein* v. *G. Fox & Co.,* 155 Conn. 609, 616, 236 A.2d 466 (1967); *State* v. *Kohlfuss,* 152 Conn. 625, 631, 211 A.2d 143 (1965). The defendant's counsel did assert that the court had shown personal bias toward him and that this affected his client's "ability to feel that he is getting a fair hearing." He did not, however, move for a mistrial or expressly suggest that the judge disqualify himself. We are dealing here, however, with an accusation of prejudice against a judge, "which strikes at the very core of judicial integrity and tends to undermine public confidence in the established judiciary. . . ." *Felix* v. *Hall-Brooke Sanitarium,* 140 Conn. 496, 501, 101 A.2d 500 (1953). For this reason, which implicates basic concepts of fair trial, we have decided to invoke our authority in the interests of justice to review "plain error" not properly preserved in the trial court. Practice Book § 3063.

"No more elementary statement concerning the judiciary can be made than that the conduct of the trial judge must be characterized by the highest degree of impartiality. If he departs from this standard, he casts serious reflection upon the system

of which he is a part. A judge is not an umpire in a forensic encounter. *Strong* v. *Carrier,* 116 Conn. 262, 263, 164 A. 501 [1933]. He is a minister of justice. *Peiter* v. *Degenring,* 136 Conn. 331, 338, 71 A.2d 87 [1949]. He may, of course, take all reasonable steps necessary for the orderly progress of the trial. *State* v. *Schneider,* 158 Wash. 504, 515, 291 P. 1093 [1930]. . . . In whatever he does, however, the trial judge should be cautious and circumspect in his language and conduct." *Felix* v. *Hall-Brooke Sanitarium,* supra, 501–502. A judge "should be scrupulous to refrain from hearing matters which he feels he cannot approach in the utmost spirit of fairness and to avoid the appearance of prejudice as regards either the parties or the issues before him." *Glodenis* v. *American Brass Co.,* 118 Conn. 29, 39, 170 A. 146 (1934). "A judge, trying the cause without a jury, should be careful to refrain from any statement or attitude which would tend to deny the defendant a fair trial." *State* v. *Gionfriddo,* 154 Conn. 90, 97, 221 A.2d 851 (1966). "It is his responsibility to have the trial conducted in a manner which approaches an 'atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding.' " *State* v. *Echols,* 170 Conn. 11, 13, 364 A.2d 225 (1975), quoting *Glasser* v. *United States,* 315 U.S. 60, 82, 62 S. Ct. 457, 86 L. Ed. 680 (1942).

It is quite evident from our review of the trial transcript that a serious departure from these high standards occurred in the court below. The minor criticism of counsel for the erroneous statement of his client's earnings in the financial affidavit, though phrased rather indelicately, was justified. "The trial judge may be under a duty to reprimand counsel in order to protect the rights of litigants."

Annot., 94 A.L.R.2d 826, 833, II § 3 [a]. A judge also has a duty to see that no falsehood or other fraud is perpetrated in court. General Statutes § 1-25; Code of Professional Responsibility DR 7-102 (B) (1) and (2). Once he declares that he believes a party or a witness has been deceitful, however, he cannot continue to preside in his role of impartial arbiter. In the present case it is clear that the trial judge on several occasions before the defendant took the witness stand stated his belief that either he or his counsel was "attempting to perpetrate a fraud" upon the court and that he had "lied under oath" at his deposition. When the defendant came to the stand, at the invitation of the trial judge, he was immediately held in contempt after giving his name and address to the court reporter. Just before this incident, in ordering that the defendant return for trial the next morning, the court referred to some prior experiences with "clients absconding" who had been represented by counsel for the defendant, implicitly tarring him with the same brush. These expressions of a preconceived view of the credibility of a witness who had not yet testified before the trier and of an attitude of skepticism concerning any person represented by his counsel must have been devastating to the defendant and astounding to any observer schooled in the simple faith that the court is an instrument of justice.

Proof of actual bias is not required for disqualification. *Dacey* v. *Connecticut Bar Assn.*, 184 Conn. 21, 441 A.2d 49 (1981); *Krattenstein* v. *G. Fox & Co.*, supra, 615. The appearance as well as the actuality of impartiality on the part of the trier is an essential ingredient of a fair trial. The record in this case discloses a

situation "which inevitably raises in the minds of litigants . . . a suspicion as to the fairness of the court's administration of justice." *Krattenstein* v. *G. Fox & Co.*, supra, 615.

We conclude that the trial judge sua sponte should have ordered a mistrial of the contested issues after he publicly committed himself in the middle of the trial to the position that the defendant had testified falsely at the deposition and that he or his lawyer was attempting to perpetrate a fraud.

That the marriage had broken down irretrievably was not contested at trial and the portion of the decree dissolving it has not been challenged on appeal. We see no reason to disturb that part of the judgment. There is error in the remainder of the judgment and it is vacated. The case is remanded for a new trial upon the issues of financial awards and property division.

In this opinion the other judges concurred.