LAUREL, INC. *v.* J. EDWARD CALDWELL, COMPTROLLER, ET AL.

SPEZIALE, C. J., PETERS, ARMENTANO, SHEA and PICKETT, Js.

Argued March 9—decision released May 18, 1982

*Victor Feingold,* assistant attorney general, with whom, on the brief, were *Carl R. Ajello,* attorney general, and *Robert Y. Pelgrift,* assistant attorney general, for the appellants (defendants).

*Daniel Shepro,* with whom was *Allan J. Rosen,* for the appellee (plaintiff).

PETERS, J.   This is the court's fourth opinion in a course of protracted litigation which began when the defendant commissioner took 0.38 of an acre in

Fairfield from the plaintiff on January 23, 1974.[1] The present appeal concerns the amount of interest to which the plaintiff is entitled.

The history of this litigation is summarized in *Laurel, Inc.* v. *Commissioner of Transportation,* 180 Conn. 11, 13, 428 A.2d 789 (1980) (hereinafter *Laurel III*): "The plaintiff appealed from the commissioner's $41,200 assessment of damages, alleging a constitutional taking of the remainder of its property, about 9.3 acres, and sought damages for that as well. The Superior Court awarded damages for inverse condemnation under General Statutes § 48-17b and ordered the defendants to amend the certificate of taking and assessment of damages and to take all of the plaintiff's property. The defendants appealed and the plaintiff cross appealed to this court. Error was found. The Superior Court was ordered to render judgment for the defendants in the action brought by Laurel, and to reinstate the condemnation proceedings initiated by the commissioner. *Laurel, Inc.* v. *State,* 169 Conn. 195, 207, 362 A.2d 1383 (1975) (hereinafter *Laurel I*). Upon reinstatement of the condemnation proceedings and Laurel's appeal from the assessment of damages, the commissioner filed a plea in abatement alleging that the court lacked jurisdiction because Laurel's appeal had not been filed within six months of the assessment as required by General Statutes § 13a-76. The plea was overruled by the Superior Court and the commissioner appealed. In *Laurel, Inc.* v. *Commissioner of Transportation,* 173 Conn. 220, 223, 377 A.2d 296 (1977) (hereinafter *Laurel*

[1] The present defendants are the state comptroller, the state treasurer and the state commissioner of transportation. The commissioner of transportion was the sole defendant in the earlier litigation.

*II*), this court found no error, holding that the equitable relief provided by *Laurel I* clearly entitled the plaintiff to a determination of its damages in the reinstated condemnation proceedings. The Superior Court awarded damages of $2,576,300 to Laurel in the condemnation proceedings." The commissioner again appealed, challenging the Superior Court's conclusions that Laurel had been deprived of a right of access by the taking and that Laurel was entitled to recover lost profits as part of its damages. We again found no error. *Laurel III,* supra, 36, 46. On the plaintiff's cross appeal in *Laurel III,* we affirmed an award to the plaintiff of costs, appraisal fees and interest at the statutory rate from the date of the taking. *Laurel III,* supra, 47.

After the decision in *Laurel III,* the plaintiff, in order to collect on its judgment, brought an action in mandamus to require the defendant treasurer to pay the funds awarded. Upon the entry of an order of mandamus and further hearings, the defendants tendered and the plaintiff accepted, on May 30, 1980, a check in the amount of $3,248,730.65 in part payment and without prejudice to the assertion of claims of underpayment by the plaintiff and overpayment by the defendants. At the same time, the defendants agreed to deposit an additional sum of $280,000 in an escrow account under the supervision of the court, so that the moneys deposited could earn the prevailing rate of interest. This deposit too was without prejudice. The only disputed claims raised by any of the parties when these arrangements were made concerned the proper calculation of interest on the plaintiff's award. These claims were resolved in the plaintiff's favor and a supplemental judgment was rendered on

December 18, 1980. From this judgment, the defendants took a timely appeal. Thereafter, they filed three supplemental motions, all of which the trial court denied, two relating to the previously raised questions about the calculation of interest and one contending that the mandamus itself had been improperly issued.

The defendants have raised three claims of error in their appeal. They argue: (1) that mandamus did not lie because the plaintiff failed to establish a clear legal right to payment; (2) that the plaintiff was not entitled to interest calculated from the date of taking; and (3) that the plaintiff was not entitled to statutory interest at the rate of 8 percent from October 1, 1979.

## I

The defendants' attack on the order of mandamus alleges that the plaintiff has no right to mandamus because it failed to comply with the provisions of General Statutes § 13a-76.[2] The defendants concede that the comptroller received a copy of the *Laurel III* judgment, as the statute requires, but maintain that the clerk failed to send the comptroller the other necessary document, a certified copy of the assessment of the commissioner.

---

[2] General Statutes § 13a-76 provides, in relevant part: "APPEAL. Any person claiming to be aggrieved by the assessment of such special damages or such special benefits by the commissioner may, at any time within six months after the same has been so filed, apply to the superior court for the judicial district within which such land is situated. . . . If no appeal to the supreme court is filed within the time allowed by law, or if one is filed and the proceedings have terminated in a final judgment finding the amount due the landowner, the clerk shall send a certified copy of the assessment of the commissioner and of the judgment to the comptroller, who shall, upon receipt thereof, draw his order upon the treasurer in favor of the landowner for the amount due him as damages."

We need not today detail all the consequences that may follow for a claimant when a clerk fails to perform the duties specified in § 13a-76. In this case, the defendants themselves concede that their liability to pay the principal sum in the mandamus action has become moot except as to calculation of interest. That result surely follows from the negotiations of record which led to the payments actually made in May 1980. See *Connecticut Employees Union "Independent," Inc.* v. *Connecticut State Employees Assn., Inc.,* 183 Conn. 235, 246–47, 439 A.2d 321 (1981); *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union,* 177 Conn. 17, 19, 411 A.2d 1 (1979). As to the interest claims themselves, we hold that the defendants waived any right to complain about technical noncompliance with § 13a-76 when they failed to file a timely motion to dismiss the mandamus action on this ground. The fundamental purpose of statutory provisions like § 13a-76 is to provide notice; the defendants' participation in the May, 1980 hearings evidenced no lack of notice. Under these circumstances, deviation from the formal requirements of § 13a-76 does not impair the plaintiff's right to pursue its mandamus action. See *General Dynamics Corporation* v. *Groton,* 184 Conn. 483, 493–94, 440 A.2d 200 (1981); *D'Andrea* v. *Rende,* 123 Conn. 377, 380, 195 A. 741 (1937).

## II

The defendants urge that the plaintiff is not entitled to receive interest from the date of the taking of its property, January 23, 1974. Their primary argument is that the statutes of this state preclude the payment of prejudgment interest when the commissioner takes land for highway pur-

poses by condemnation. On this theory, interest could not start to run until 1978, the date of the original judgment in the Superior Court leading to *Laurel III*. In the alternative, they argue that no prejudgment interest can properly be awarded to this plaintiff for the period from January 23, 1974 to August 29, 1975, when the Superior Court reinstated the condemnation following *Laurel I*. The trial court rejected these arguments on their merits.

Before reaching the merits, however, we must determine whether these arguments are procedurally appropriate in light of the decision in *Laurel III*. There, after noting (p. 46) that "[b]oth parties assign error to the court's determination of the rate of interest to be awarded on Laurel's compensation," we upheld the referee's award of "interest from the date of the taking." *Laurel III,* supra, 47. We agree with the plaintiff that this issue may not now be relitigated by the defendants. If the mandamus action is viewed as an action separate from the earlier condemnation proceedings, the defendants are barred by the law of collateral estoppel from reopening an issue resolved against them by a valid final judgment. *Laurel III,* supra, 22–23; *Connecticut Light & Power Co.* v. *Tax Commissioner,* 169 Conn. 58, 62, 362 A.2d 958 (1975); *Corey* v. *Avco-Lycoming Division,* 163 Conn. 309, 317, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973); James & Hazard, Civil Procedure (2d Ed. 1977) § 11.16; Restatement (Second), Judgments § 68 (Tentative Draft No. 4, 1977). If mandamus is viewed as ancillary to, rather than independent of, the condemnation action, the law of the case would equally preclude reargument of an issue finally and adversely decided. See *Breen* v. *Phelps,* 186 Conn. 86, 99, 439

A.2d 1066 (1982); James & Hazard, supra, § 11.5. Because of our holding in *Laurel III*, the defendants are bound to pay interest to the plaintiff from January 23, 1974.

### III

The defendants urge finally that the calculation of the plaintiff's interest at the statutory rate, as ordered by the 1978 judgment affirmed in *Laurel III*, must be at the statutory rate of 6 percent per annum. It was not until October 1, 1979, that the legislature effectively changed that rate to 8 percent. General Statutes § 37-3a, as amended by Public Acts 1979, No. 79-364, § 2.[3] The defendants claim that it was improper to apply the 1979 statute to a 1978 judgment, and that the trial court was in error, therefore, in awarding the plaintiff interest from October 1, 1979, to the date of payment at the rate of 8 percent. Since this issue was not, and could not have been, raised in *Laurel III*, it is appropriately before us now.

---

[3] Public Acts 1979, No. 79-364 provided as follows: "Sec. 2. Section 37-3a of the general statutes is repealed and the following is substituted in lieu thereof:

"Except as provided in section 52-192a, interest at the rate of [six] EIGHT per cent a year, and no more, may be recovered and allowed in civil actions OR ARBITRATION PROCEEDINGS UNDER CHAPTER 909, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable except as otherwise provided with respect to demand obligations in section 42a-3-122 (4) (a). Judgment may be given for the recovery of taxes assessed and paid upon the loan, and the insurance upon the estate mortgaged to secure the loan, whenever the borrower has agreed in writing to pay such taxes or insurance or both. Whenever the maker of any contract is a resident of another state or the mortgage security is located in another state, any obligee or holder of such contract, residing in this state, may lawfully recover any agreed rate of interest or damages on such contract until it is fully performed, not exceeding the legal rate of interest in the state where such contract purports to have been made or such mortgage security is located."

The question before the trial court was the proper interpretation of the 1978 judgment which ordered payment of interest and costs without specifying a numerical formula for the calculation of the interest award. This court, in denying the plaintiff's cross appeal on interest in *Laurel III*, supra, 46–47, noted that the trial court there "found that a fair and reasonable overall average interest rate which a reasonably prudent investor could have obtained in Fairfield County on January 23, 1974, based on prevailing interest rates at that time, was 8.17 percent per annum. The court also found that Laurel's three construction mortgages, which were obtained at rates of 8.5, 8, and 12 percent, were most fair and reasonable, more than fair and reasonable, and favorable, respectively, in the Fairfield County area in January, 1974. The court concluded that the 6 percent per annum statutory interest rate on civil judgments was not fair, just and reasonable and that a rate of 8.17 from the date of the taking to the date of payment would render the compensation award fair and just. Nevertheless the judgment makes no provision for interest at a rate other than that provided by the statute." (Footnotes omitted.)

Had the 1978 judgment stipulated payment of interest at the rate of 6 percent, that award would not be subject to modification merely because of a subsequent legislative alteration of the statutory rate of interest. The 1978 judgment determined what interest was required, in accordance with equitable principles; *Laurel III*, supra, 47; *Seaboard Air Line Ry. Co.* v. *United States*, 261 U.S. 299, 304, 43 S. Ct. 354, 67 L. Ed. 664 (1923); to satisfy the claimant's entitlement to just compensation. *Textron, Inc.* v. *Commissioner of Transpor-*

*tation,* 176 Conn. 264, 268, 407 A.2d 946 (1978); *E. & F. Construction Co.* v. *Ives,* 156 Conn. 416, 420, 242 A.2d 768 (1968).

In this case, however, the award of interest was at the rate provided by the statute without incorporation of the 6 percent statutory rate. The award must be interpreted in the light of the accompanying factual finding that 8.17 percent would have been a fair and reasonable overall average interest rate to compensate a Fairfield County investor at the time of the taking. Under these circumstances, the trial court did not err in concluding that the award contemplated payment in accordance with the prevailing statutory rate of interest as payments became due. We agree with its determination that the plaintiff is entitled to interest on its judgment at the rate of 6 percent from the date of taking to October 1, 1979, and at the rate of 8 percent per annum from October 1, 1979 to the date of payment.

There is no error. The case is remanded for a *final* calculation of the amount of interest that is payable to the plaintiff in accordance with our decision.

In this opinion the other judges concurred.