## ROBERT CONSIGLIO *v.* CAROL CONSIGLIO
### (AC 16704)

O'Connell, C. J., and Lavery and Landau, Js.

Submitted on briefs January 27—officially released May 12, 1998

*Joseph Chiarelli* filed a brief for the appellant (plaintiff).

*Marcy Kossar* filed a brief for the appellee (defendant).

*Opinion*

LAVERY, J. This is an appeal from a judgment dissolving the marriage of the parties. The dispositive issue on appeal arises from the trial court's decision not to recuse himself in this matter. The plaintiff claims that the trial court improperly (1) exercised its discretion and prejudiced him by presiding over the present case when the judge had previously recused himself from all future matters in which the plaintiff's attorney appeared, and (2) admitted hearsay testimony from the defendant. Because our resolution of the first issue is dispositive, it is unnecessary to consider the second issue related to the merits of the dissolution action.

On September 10, 1996, the plaintiff's attorney, Joseph Chiarelli, was at a motions calendar in an unrelated matter. After an exchange with the trial court, Chiarelli orally moved for the judge to recuse himself

from hearing any case in which Chiarelli was involved.[1]
The trial court granted Chiarelli's motion and recused

---

[1] The following colloquy occurred:

"[Chiarelli]: Okay, Judge, as I'm sitting here it occurs to me that I should make a motion to disqualify you in the hearing of any case that I'm involved in. You are—

"The Court: Well, if it occurs to you, are you making that—

"[Chiarelli]: Well, I'd like to address to you—

"The Court: Are you making that motion?

"[Chiarelli]: I'm making that motion now, Judge. And the reason is that we had very hard feelings against one another in my recollection while you were practicing law. And I thought that when you got on the bench that your attitude toward me changed. But, now I—

"The Court: Mr. Chiarelli, from my own—

"[Chiarelli]: Can I finish, Judge?

"The Court: Yeah. [For my] own curiosity, would you refer to when that was because you and I didn't practice the same type of law and unless you were defending malpractice cases I can't imagine ever having a case with you—

"[Chiarelli]: No, no, no. No, that isn't how.

"The Court: Oh.

"[Chiarelli]: It was our reaction to one another when we saw one another. And you were associated with Miss Daskal Rubin. Am I correct, Judge?

"The Court: That's correct.

"[Chiarelli]: Yes. Okay. And I think because of the way you have been so critical of me for nothing here. This woman has come here and complained about nothing. You picked up on it right away. And you started letting me have it for what I think is no cause. So, I think that these hard feelings that you have against me for when I practiced law and when you practiced law at the same time have carried over to while you're a judge—

"The Court: Mr. Chiarelli—

"[Chiarelli]: Yes, sir.

"The Court: Did you and I ever have a matter together in all the years that I practiced?

"[Chiarelli]: I can't think of one off the top of my head, Judge.

"The Court: And the reason you can't is I don't think we ever did.

"[Chiarelli]: Yeah. But, you have a dislike for me and I had a dislike for you. But, I got over my dislike for you. It's obvious to me that you didn't get over your dislike for me, making these comments to me. Being critical of what I said to this woman on a telephone answering machine—

"The Court: Mr.—

"[Chiarelli]: It seems that you seize on every opportunity to insult me. And I don't like it and I don't want to practice law—

"The Court: And I don't want you raising your voice in my courtroom, Mr. Chiarelli—

"[Chiarelli]: Oh, I'm sorry. I'm sorry if I raised my voice. I apologize to you, Judge—

himself from all of Chiarelli's matters "[b]ecause I do not approve of the way you handle yourself."

On September 30, 1996, the first day of trial in this case, Chiarelli represented the plaintiff before the same court who had recused himself less than three weeks before from hearing any cases involving Chiarelli. At that time, the trial judge informed both parties and counsel that he was hearing this case because he had been instructed to do so by the presiding judge.[2] Chiarelli reminded the court of the reason he had recused

"The Court: Because in one second I'm going to tell the sheriff to escort you right through that door.

"[Chiarelli]: Okay—

"The Court: Now, sit down.

"[Chiarelli]: Sure, Judge.

"The Court: And I will tell you that the only thing that is keeping me from doing exactly what you said was that I have some feeling for my brethren.

"[Chiarelli]: Yes, thank you.

"The Court: But, I'm going to grant your request.

"[Chiarelli]: Thank you, Judge.

"The Court: And I'm going to recuse myself from all of your matters.

"[Chiarelli]: Okay, thank you very much, Your Honor.

"The Court: Because I do not approve of the way you handle yourself."

[2] The following colloquy occurred:

"The Court: Are both counsel here?

"[Counsel for the Defendant]: Yes, Your Honor.

"The Court: All right. Will both counsel approach the bench. . . . I have told you that I am hearing this case because the chief judge has instructed me to hear this case. And the chief judge has further said that she will allow no attorney to dictate who will or will not hear their cases. You and I had a discussion on the record in the Gordon versus Gordon case, the transcript is before me, and in that transcript you made the claim that I was treating you unfairly. At that time I said to you, if you felt that way that I would recuse myself from your cases, and that was the way it was left. I did not hear this case.

"[Chiarelli]: Can I address what you just said?

"The Court: Yes.

"[Chiarelli]: Okay. You said that you didn't like the way I handled myself and that's why you disqualified yourself.

"The Court: Well—

"[Chiarelli]: It's on page 19 of the transcript.

"The Court: On page 19 of the transcript it says—

"[Chiarelli]: Oh, it's page 18 then. And then on [page] 19 you say that you will recuse yourself from all my cases.

himself and that the court was imposing on his client the needless expense of filing an appeal in this matter before it had even started. The trial judge repeated that he was instructed to proceed with the case and that if Chiarelli had a problem to take it up with the presiding judge.[3] Chiarelli went before the presiding judge and requested that she reassign this case to another judge. She denied his request.[4] The trial proceeded and this appeal followed.

The plaintiff claims on appeal that the trial court abused its discretion and prejudiced him by hearing the trial of his case when the trial court previously had

"The Court: I did say that. You are absolutely right, I did say that.

"[Chiarelli]: Thank you, Judge.

"The Court: I am not contesting the fact that I did say that. But I am telling you now that my instructions are to proceed with this case. And on the record I'm saying to you that I take my judicial responsibilities very seriously, and I do not allow any feelings that I may have for any litigant or for any attorney to affect my judicial rulings or decisions, and you are going to have to accept that."

[3] The trial judge stated: "Mr. Chiarelli, the only thing that I would suggest to you is that if you are unhappy and refuse to go along with what I have just told you, that you go down to the [presiding judge] and you see [the presiding judge] and tell her exactly that."

[4] "[Presiding Judge]: On the Consiglio matter, the question is the assignment of the case, and whether [the trial judge] is—well, first of all whether the parties are ready to proceed, and I gather they are, and whether [the trial judge] has determined that he can hear this case, and he, as I understand it, has determined he can hear this case, that he can be fair to both counsel, to all parties involved. He has no particular knowledge of the case, and there's no other judge available, and the matter's referred to [the trial judge].

"[Chiarelli]: Judge—Excuse me, Judge. I didn't mean to interrupt you.

"[Presiding Judge]: That's okay.

"[Chiarelli]: Did you read the transcript where he disqualified himself?

"[Presiding Judge]: I did, and I understand he has rethought that, and he does not consider himself a candidate for recusal, and the matter's going to proceed in front of [the trial judge]. So, go try the case in front of [the trial judge].

"[Chiarelli]: Can I present my argument to you that I presented to [the trial judge] about—

"[Presiding Judge]: No. No. You cannot. The matter's assigned. We don't allow lawyers or clients or anybody else to choose what judge they're going to try cases in front of. The matter's referred to [the trial judge]."

recused itself from hearing any case in which the plaintiff's counsel of record had an interest. We agree with the plaintiff.

"No more elementary statement concerning the judiciary can be made than that the conduct of the trial judge must be characterized by the highest degree of impartiality. If he departs from this standard, he casts serious reflection upon the system of which he is a part. A judge is not an umpire in a forensic encounter. . . . He is a minister of justice. . . . He may, of course, take all reasonable steps necessary for the orderly progress of the trial. . . . In whatever he does, however, the trial judge should be cautious and circumspect in his language and conduct. A judge should be scrupulous to refrain from hearing matters which he feels he cannot approach in the utmost spirit of fairness and to avoid the appearance of prejudice as regards either the parties or the issues before him. . . . *Cameron* v. *Cameron*, 187 Conn. 163, 168–69, 444 A.2d 915 (1982). Moreover, disqualification of a trial judge is not dependent upon proof of actual bias. The appearance and the existence of impartiality are both essential elements of a fair trial. Id. Canon 3 (c) (1) of the Code of Judicial Conduct requires a judge to disqualify himself in any proceeding in which judicial impartiality might reasonably be doubted.[5] Any conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned is a basis for the judge's disqualification." (Internal quotation marks omitted.) *Postemski* v. *Landon*, 9 Conn. App. 320, 322, 518 A.2d 674 (1986).

"It is [the judge's] responsibility to have the trial conducted in a manner which approaches an 'atmo-

[5] Canon 3 (c) (1) of the Code of Judicial Conduct provides: "A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

"(A) the judge has a personal bias or prejudice concerning a party . . . ."

sphere of perfect impartiality which is so much to be desired in a judicial proceeding.' *State* v. *Echols*, 170 Conn. 11, 13, 364 A.2d 225 (1975), quoting *Glasser* v. *United States*, 315 U.S. 60, 82, 62 S. Ct. 457, 86 L. Ed. 680 (1942)." (Internal quotation marks omitted.) *Cameron* v. *Cameron*, supra, 187 Conn. 169.

"[E]very litigant is entitled to nothing less than the cold neutrality of an impartial judge. It is the duty of [c]ourts to scrupulously guard this right and to refrain from attempting to exercise jurisdiction in any matter where his qualification to do so is seriously brought in question. The exercise of any other policy tends to discredit the judiciary and shadow the administration of justice. It is not enough for a judge to assert that he is free from prejudice. His mien and the reflex from his court room speak louder than he can declaim on this point. If he fails through these avenues to reflect justice and square dealing, his usefulness is destroyed. The attitude of the judge and the atmosphere of the court room should indeed be such that no matter what charge is lodged against a litigant or what cause he is called on to litigate, he can approach the bar with every assurance that he is in a forum where the judicial ermine is everything that it typifies—purity and justice. The guaranty of a fair and impartial trial can mean nothing less than this." *Hayslip* v. *Douglas*, 400 So. 2d 553, 557 (Fla. App. 1981), quoting *State ex rel. Davis* v. *Parks*, 141 Fla. 516, 519–20, 194 So. 613 (1939).

On the basis of our review of the record, we conclude that a reasonable person who is aware of all the circumstances surrounding this judicial proceeding would question the trial judge's impartiality in hearing a case in which Chiarelli represented one of the parties. On the first day of trial, the first words from the trial judge were that he had been instructed to hear this case. The subsequent discussion concerning the trial judge's recusal on matters involving Chiarelli, as well as the

discussion on the record with the presiding judge, all created an atmosphere in which the plaintiff could reasonably believe that he was unable to receive a fair trial before the trial judge. Further, the trial judge's decision to recuse himself from all matters involving Chiarelli was made on September 10, 1996. Three weeks later, the judge sat before the plaintiff, stated that he had been instructed to hear the plaintiff's case, and that he "[does] not allow any feelings that [he] may have for any litigant or for any attorney to affect [his] judicial rulings or decisions, and you are going to have to accept that." This can hardly be said to have assuaged the plaintiff's concerns that he is now facing a judge who dislikes his attorney and, therefore, is not impartial.

"Though a client and his counsel are separate entities, they share a common bond forged by the attorney-client relationship and tempered in the rigors of litigation. Most clients find the courtroom to be an unfamiliar and, in some instances, uncomfortable atmosphere and so it is not unusual that they entrust themselves into their counsel's care and view their interests as one. Thus, it is understandable that a client would become concerned and fearful upon learning that the trial judge has an antipathy toward his lawyer and has expressed the opinion that [he does not approve of the way the client's counsel handles himself]." *Hayslip* v. *Douglas*, supra, 400 So. 2d 557.

When the trial judge decided to recuse himself from all future matters involving Chiarelli, this should have ended any concern for either Chiarelli or the trial judge over his hearing of cases involving Chiarelli. It was inappropriate for the presiding judge to instruct the trial judge to hear this case. The presiding judge does not have the power to tell a trial judge when he or she may or may not recuse himself or herself. The matter of a judge's recusal is in the reasonable discretion of that judge and is not to be overruled by a presiding

judge. The decision to recuse oneself is an intrinsic part of the independence of a judge. Any attempt to instruct or order a judge to hear a matter after recusal violates the independence of judges individually and the judiciary as a whole.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.