## VICKI ANN FORD *v.* THOMAS EDWARD FORD
## (AC 17225)

O'Connell, C. J., and Foti and Landau, Js.

Argued December 8, 1998—officially released April 6, 1999

*Max F. Brunswick*, for the appellant (defendant).

*Morris I. Olmer*, with whom, on the brief, was *Robert C. Bird*, for the appellee (plaintiff).

*Opinion*

LANDAU, J. The defendant, Thomas Edward Ford, appeals from a postdissolution judgment holding him in wilful contempt and entering orders addressed to his alimony arrearage. The dispositive issue on appeal arises from the trial court's denial of a motion for recusal. We must decide whether, under the circumstances of this case, the trial judge's continuing to preside at the hearing created an appearance of impropriety, which required his recusal. We conclude that it did. Because our resolution of this issue is dispositive, it is unnecessary to consider the other issues raised on appeal.[1]

The following facts and procedural posture are necessary for the resolution of this appeal. On September 6, 1996, at a contempt hearing,[2] the defendant's former

---

[1] The defendant also claims on appeal that the trial court improperly (1) sustained an objection to a question posed to the defendant's former attorney and chief defense witness, Joseph Chiarelli, regarding whether Chiarelli instructed the defendant not to comply with the alimony order, (2) found that there was sufficient evidence to support its finding of wilful contempt and (3) exercised its discretion in ordering the defendant to resume payments and to increase his alimony obligations.

[2] At oral argument before this court, the plaintiff asserted that she originally filed an application for a rule to show cause primarily seeking a determination as to whether in fact there was an arrearage in this case. The plaintiff also argued that the contempt issue was almost immaterial but conceded that the issue was before the trial court. The defendant filed an objection to what he described as the plaintiff's motion for contempt. The trial court, in its memorandum of decision, refers to the plaintiff's motion

counsel, Joseph Chiarelli, testified that he had an agreement with plaintiff's counsel some years prior to the contempt proceeding regarding the suspension of alimony payments, which were the subject of the contempt hearing. The hearing was continued and the trial court heard additional testimony on October 17, 1996, and again on October 21, 1996. The plaintiff's former counsel, Louis Parley, testified at the October 21, 1996 hearing that he could not recall whether he had an agreement with Chiarelli.

Following the September 6, 1996 hearing, the trial court, *Skolnick, J.*, and Chiarelli were involved in an unrelated matter. *Gordon* v. *Gordon,* Superior Court, judicial district of New Haven, Docket No. 387386 (September 10, 1996). In *Gordon,* the trial court granted Chiarelli's motion for recusal, stating, "I'm going to recuse myself from all of your matters . . . [b]ecause I do not approve of the way you handle yourself."[3] In

for contempt and rule to show cause. Because the parties treated the application as a motion for contempt, and neither party objected to the trial court's treating it as a motion for contempt, we will do likewise. See *Doe* v. *Marselle,* 38 Conn. App. 360, 363–64, 660 A.2d 871 (1995), rev'd on other grounds, 236 Conn. 845, 675 A.2d 835 (1996), citing *Crozier* v. *Zaboori,* 14 Conn. App. 457, 463, 541 A.2d 531 (1988).

[3] The following colloquy occurred during the trial in *Gordon* v. *Gordon,* supra, Superior Court, Docket No. 387386:

"[Chiarelli]: Okay, Judge, as I'm sitting here it occurs to me that I should make a motion to disqualify you in the hearing of any case that I'm involved in. You are—

"The Court: Well, if it occurs to you, are you making that—

"[Chiarelli]: Well, I'd like to address to you—

"The Court: Are you making that motion?

"[Chiarelli]: I'm making that motion now, Judge. And the reason is that we had very hard feelings against one another in my recollection while you were practicing law. And I thought that when you got on the bench that your attitude toward me changed. But, now I—

"The Court: Mr. Chiarelli, from my own—

"[Chiarelli]: Can I finish, Judge?

"The Court: Yes. [For my] own curiosity, would you refer to when that was because you and I didn't practice the same type of law and unless you were defending malpractice cases I can't imagine ever having a case with you—

the present case, on October 17, 1996, the defendant filed a motion for recusal of the trial judge, arguing that on the basis of the exchange between Chiarelli and the trial judge in *Gordon*, the judge was biased. The trial court denied the motion on the same day.

"[Chiarelli]: No, no, no, no, that isn't how.

"The Court: Oh.

"[Chiarelli]: It was our reaction to one another when we saw one another. And you were associated with Miss Daskal Rubin. Am I correct, Judge?

"The Court: That's correct.

"[Chiarelli]: Yes. Okay. And I think because of the way you have been so critical of me for nothing here. This woman has come here and complained about nothing. You picked up on it right away. And you started letting me have it for what I think is no cause. So, I think that these hard feelings that you have against me for when I practiced law and when you practiced law at the same time have carried over to while you're a judge—

"The Court: Mr. Chiarelli—

"[Chiarelli]: Yes, sir.

"The Court: Did you and I ever have a matter together in all the years that I practiced?

"[Chiarelli]: I can't think of one off the top of my head, Judge.

"The Court: And the reason you can't is I don't think we ever did.

"[Chiarelli]: Yes. But, you have a dislike for me and I had a dislike for you. But, I got over my dislike for you. It's obvious to me that you didn't get over your dislike for me, making these comments to me. Being critical of what I said to this woman on a telephone answering machine—

"The Court: Mr.—

"[Chiarelli]: It seems that you seize on every opportunity to insult me. And I don't like it and I don't want to practice law—

"The Court: And I don't want you raising your voice in my courtroom, Mr. Chiarelli.

"[Chiarelli]: Oh, I'm sorry. I'm sorry if I raised my voice. I apologize to you, Judge.

"The Court: Because in one second I'm going to tell the sheriff to escort you right through that door.

"[Chiarelli]: Okay—

"The Court: Now, sit down.

"[Chiarelli]: Sure, Judge.

"The Court: And I will tell you that the only thing that is keeping me from doing exactly what you said was that I have some feeling for my brethren.

"[Chiarelli]: Yes, thank you.

"The Court: But, I'm going to grant your request.

"[Chiarelli]: Thank you, Judge.

"The Court: And I'm going to recuse myself from all of your matters.

"[Chiarelli]: Okay, thank you very much, Your Honor.

"The Court: Because I do not approve of the way you handle yourself."

At the conclusion of the hearing, the trial court found the defendant in contempt and found that an arrearage existed toward which the defendant should pay an additional sum each week. This appeal followed.

This action is not the first instance in which this trial judge and this attorney have been the principal players. See *Consiglio* v. *Consiglio*, 48 Conn. App. 654, 711 A.2d 765 (1998), and *Gordon* v. *Gordon*, supra, Superior Court, Docket No. 387386. In both prior instances, however, Chiarelli appeared before the trial court as an attorney; in this instance, he appeared as a witness. The defendant claims that the prior conversations between the trial judge and Chiarelli and Chiarelli's role as the defendant's chief witness in this action constitute a strong appearance of conflict of interest and partiality.

The plaintiff responds that the only evidence of unfairness to which the defendant can point occurred in an unrelated matter in which Chiarelli acted as an attorney and not as a witness. Furthermore, the prior recusal was based on Chiarelli's actions as an attorney, not on his credibility. The plaintiff also asserts that even if the trial judge was biased against Chiarelli, the finding of contempt does not constitute reversible error because no legal authority exists to support a defense in a contempt proceeding that alleges that the action is excused or justified because an attorney instructed his client to violate a court order. We agree with the defendant.

"No more elementary statement concerning the judiciary can be made than that the conduct of the trial judge must be characterized by the highest degree of impartiality. If he departs from this standard, he casts serious reflection upon the system of which he is a part. A judge is not an umpire in a forensic encounter. . . . He is a minister of justice. . . . He may, of course,

take all reasonable steps necessary for the orderly progress of the trial. . . . In whatever he does, however, the trial judge should be cautious and circumspect in his language and conduct. A judge should be scrupulous to refrain from hearing matters which he feels he cannot approach in the utmost spirit of fairness and to avoid the appearance of prejudice as regards either the parties or the issues before him. . . . *Cameron* v. *Cameron*, 187 Conn. 163, 168–69, 444 A.2d 915 (1982). Moreover, disqualification of a trial judge is not dependent upon proof of actual bias. The appearance and the existence of impartiality are both essential elements of a fair trial. Id. Canon 3 (c) (1) of the Code of Judicial Conduct requires a judge to disqualify himself in any proceeding in which judicial impartiality might reasonably be doubted.[4] Any conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned is a basis for the judge's disqualification. . . . *Postemski* v. *Landon*, 9 Conn. App. 320, 322, 518 A.2d 674 (1986).

"It is [the judge's] responsibility to have the trial conducted in a manner which approaches an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding. *State* v. *Echols*, 170 Conn. 11, 13, 364 A.2d 225 (1975), quoting *Glasser* v. *United States*, 315 U.S. 60, 82, 62 S. Ct. 457, 86 L. Ed. 680 (1942). . . . *Cameron* v. *Cameron*, supra, 187 Conn. 169.

"[E]very litigant is entitled to nothing less than the cold neutrality of an impartial judge. It is the duty of [c]ourts to scrupulously guard this right and to refrain from attempting to exercise jurisdiction in any matter

[4] Canon 3 (c) (1) of the Code of Judicial Conduct provides in relevant part: "A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (A) the judge has a personal bias or prejudice concerning a party . . . ."

where his qualification to do so is seriously brought in question. The exercise of any other policy tends to discredit the judiciary and shadow the administration of justice. It is not enough for a judge to assert that he is free from prejudice. His mien and the reflex from his court room speak louder than he can declaim on this point. If he fails through these avenues to reflect justice and square dealing, his usefulness is destroyed. The attitude of the judge and the atmosphere of the court room should indeed be such that no matter what charge is lodged against a litigant or what cause he is called on to litigate, he can approach the bar with every assurance that he is in a forum where the judicial ermine is everything that it typifies — purity and justice. The guaranty of a fair and impartial trial can mean nothing less than this. *Hayslip* v. *Douglas*, 400 So. 2d 553, 557 (Fla. App. 1981), quoting *State ex rel. Davis* v. *Parks*, 141 Fla. 516, 519–20, 194 So. 613 (1939)." (Internal quotation marks omitted.) *Consiglio* v. *Consiglio*, supra, 48 Conn. App. 659–60.

Furthermore, "an inquiry into disqualification of a judge requires a sensitive evaluation of all the facts and circumstances in order to determine whether a failure to disqualify the judge was an abuse of sound judicial discretion." *Abington Ltd. Partnership* v. *Heublein*, 246 Conn. 815, 823, 717 A.2d 1232 (1998). "Accordingly, our review ordinarily is limited to the question of whether a trial judge has abused his discretion." Id., 824.

The plaintiff first asserts that the prior recusal of the trial judge involved Chiarelli's status as an attorney and that in this action he was a witness.[5] Under these

---

[5] The only authority on which the defendant relies in support of this argument is *Perlmutter* v. *Johnson*, 6 Conn. App. 292, 295, 505 A.2d 13, cert. denied, 200 Conn. 801, 509 A.2d 517 (1986), cert. denied, 479 U.S. 1035, 107 S. Ct. 886, 93 L. Ed. 2d 839 (1987). The defendant's reliance on that case, however, is misplaced. In *Perlmutter*, the court noted that the prior appearance of a party before a trial judge does not, in itself, reflect on the judge's impartiality in a subsequent action involving that party. The defendant in

circumstances, this is a distinction without a difference. "Once [a judge] declares that he believes a party or a witness has been deceitful . . . he cannot continue to preside in his role of impartial arbiter." *Cameron* v. *Cameron,* supra, 187 Conn. 170. While the trial judge, in prior proceedings, did not characterize Chiarelli as "deceitful," he did state, "I do not approve of the way you handle yourself" and recused himself from *all matters involving* Chiarelli.

The plaintiff also maintains that Chiarelli's testimony was not material and that his credibility, therefore, was not really at issue. We disagree.

"In order to constitute contempt, a party's conduct must be wilful. *Connolly* v. *Connolly,* 191 Conn. 468, 483, 464 A.2d 837 (1983). The contempt remedy is particularly harsh . . . and may be founded solely upon some clear and express direction of the court. . . . *Blaydes* v. *Blaydes,* 187 Conn. 464, 467, 446 A.2d 825 (1982). A good faith dispute or legitimate misunderstanding of the terms of an alimony or support obligation may prevent a finding that the payor's nonpayment was wilful. This does not mean, however, that such a dispute or misunderstanding will preclude a finding of wilfulness as a predicate to a judgment of contempt. Whether it will preclude such a finding is ultimately within the trial court's discretion. It is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order. *Marcil* v. *Marcil,* 4

this action, however, does not claim that the fact that Chiarelli appeared before Judge Skolnick in prior cases mandates his disqualification in this case. Rather, the defendant claims that based on what transpired in the prior cases involving Chiarelli, he reasonably could believe that he was unable to receive a fair hearing before this trial judge. See, e.g., *Consiglio* v. *Consiglio,* supra, 48 Conn. App. 660–61 (on the basis of discussion regarding trial judge's recusal on all matters involving Chiarelli, plaintiff reasonably could have believed that he would be unable to receive fair trial before trial judge).

Conn. App. 403, 405, 494 A.2d 620 (1985)." (Internal quotation marks omitted.) *Eldridge* v. *Eldridge*, 244 Conn. 523, 529, 710 A.2d 757 (1998). The contempt remedy is particularly drastic. "In the summer of 1631 at the Salisbury assizes, a prisoner aggravated at his sentence 'ject un Brickbat a le dit Justice que narrowly mist . . . .' An indictment was immediately drawn and 'son dexter manus ampute & fix al Gibbet sur que luy mesme immediatement hange in presence de Court.' "[6] While a misunderstanding or good faith dispute regarding the failure to honor a court order is ultimately within the trial court's discretion; *Marcil* v. *Marcil*, supra, 405; the exercise of the trial court's discretion must be surrounded by a pureness and chastity untainted by the appearance of partiality.[7]

Undertaking the necessary review, we must decide whether the circumstances in this case would have led an objective observer reasonably to question the trial judge's impartiality. Following the September 6, 1996 hearing, the contempt proceeding was continued until October 17, 1996. Thereafter, on September 10, 1996, the trial judge in *Gordon* v. *Gordon*, supra, Superior Court, Docket No. 387386, recused himself from all of Chiarelli's matters. Approximately one month later, the defendant in the present case filed a motion for recusal on the basis of the conversation between the trial judge and Chiarelli in *Gordon*. The trial court denied that

[6] D. Dobbs, "Contempt of Court: A Survey," 56 Cornell L. Rev. 183, 187 (1971), quoting Anonymous, Dyer 188b (note) (1688 reprint). "A later report carries the translation from law French as follows: '[The prisoner] threw a brickbat at the said Judge, which narrowly missed; and for this an indictment was immediately drawn by Noy against the prisoner, and his right hand cut off and fixed to the gibbet, upon which he was himself immediately hanged in the presence of the Court.' " Id., 187 n.9, quoting 73 Eng. Rep. 416 n. (1631).

[7] "O, it is excellent
To have a giant's strength; but it is tyrannous
To use it like a giant!"
William Shakespeare, Measure for Measure, act 2, sc. *ii*, lines 107–109.

motion. Those actions can hardly be said to preclude the defendant's questioning of the trial judge's impartiality, as he is now aware of prior instances that he believes indicate that the trial judge dislikes his chief witness, Chiarelli. Rather, actions such as these "inevitably [raise] in the minds of litigants . . . a suspicion as to the fairness of the court's administration of justice." (Internal quotation marks omitted.) *Cameron* v. *Cameron*, supra, 187 Conn. 171.

On the basis of the record before us, we are persuaded that a reasonable person knowing all of the circumstances might be apprehensive and concerned on learning that the trial judge, who must fashion a discretionary decision, has had critical and adverse feelings concerning a significant witness and had recused himself as a result of his experience with the individual in a prior proceeding. Accordingly, we conclude that the trial judge improperly exercised his discretion when he failed to grant the motion for recusal.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.