[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S APPLICATION FOR RULE TO SHOW CAUSE. #208. DATED SEPTEMBER 11, 2000
In this application the plaintiff represents that the defendant has failed to comply with certain post judgment orders regarding alimony and insurance and she requests that the defendant show cause why the orders should not be obeyed. The plaintiff also seeks attorneys fees in connection with the bringing of this application; however she does not seek a finding that the defendant is in contempt of the court's orders. The ruling of Judge Skolnick on a similar motion filed on January 24, 1996 was the subject of Ford vs. Ford, 52 Conn. App. 522 (1999) which was decided on grounds unrelated to the issues in this case. This court did not rely on Judge Skolnick's memorandum of decision in reaching its findings and conclusions.
The judgment dissolving the marriage of the parties, dated November 29, 1984, ordered the defendant to pay to the plaintiff unallocated alimony and child support of $300.00 per week until October 1, 1985 at which time the payments were reduced to $250.00 per week until August 1, 1990 when the payments were reduced to $200.00 per week "to terminate upon the plaintiff's remarriage or cohabitation within the meaning of the statute, or upon the death of either party, all such payments to be made in cash and to be otherwise subject to modification by the court under Connecticut law, caused by changed conditions." The defendant was also ordered to designate the plaintiff an irrevocable beneficiary of $50,000.00 of his life insurance so long as he was obligated to pay alimony.
The court file was stripped pursuant to Practice Book § 7-11 on May 1, 2000, consequently several motions and notations referred to during CT Page 1212 the hearing on this application were not in the file. The record in the case of Ford v. Ford, supra, was admitted as Plaintiff's Exhibit 3 and it contains copies of several of the pertinent motions. The docket summary sheet in the court file reflects the filing of the motions hereinafter referred to.
The defendant made the payments due at the time, $250.00 per week, for part of 1987. He then began making payments of $50.00 per week which is the amount he believed to be the child support portion of the order. The defendant stopped paying the alimony portion of the order in September of 1987. By rule to show cause dated September 2, 1987, the defendant sought modification of the alimony order on the grounds that the plaintiff was living with an unrelated man under circumstances which would give rise to a modification of alimony under General Statutes § 46b-86 (b). He was represented at the time by Attorney Chiarelli. Page 16 of Plaintiff's Exhibit 3 contains a notation that this motion was "marked off with orders retroactive by agreement" on September 22, 1987. At the hearing before this court there was no evidence presented that this motion was ever ruled upon and this motion was not pursued by the defendant.
The docket summary sheet indicates that the plaintiff filed two motions on October 1, 1987, a motion for contempt #128 and a motion to modify #129. The motion for contempt is no longer in the file and a copy was not presented to the court; however, based on the testimony presented at the hearing the court concludes that the contempt motion arose from the defendant's non payment of alimony. The motion to modify is reprinted on page 17 of Plaintiff's Exhibit 3 and it requests an increase in the $250.00 per week unallocated alimony and support order. At that time the plaintiff was represented by Attorney Parley. There was no evidence presented that either motion was ever ruled on.
On behalf of the defendant, Attorney Chiarelli commenced a deposition of the plaintiff on Saturday, June 4, 1988. The plaintiff did not bring certain items that she was noticed to produce at the deposition and consequently the deposition was continued to a later date. The defendant claims that at the deposition Attorney Chiarelli, and Attorney Parley, agreed that until the continued deposition was conducted he would not be required to make alimony payments in the amount of $200.00 per week. The continued deposition was never conducted and it is the defendant's position that no alimony obligation has accrued since the date of the agreement in June 1988.
Attorney Chiarelli testified that after the deposition was adjourned on June 4, 1988, he reached an agreement with Attorney Parley that Mr. Ford would not have to comply with the court order regarding alimony while the deposition was pending. He also testified that the deposition was never CT Page 1213 completed. Attorney Chiarelli did not recall if he prepared a written memorandum of the agreement or if there was an exchange of letters between counsel regarding the agreement. No written evidence of the specific agreement was presented at the hearing.
The defendant did introduce two letters written by Attorney Parley to Attorney Chiarelli which he claims indicate the existence of an agreement regarding the suspension of alimony payments. These letters were not admitted into evidence at the earlier hearing. The first letter dated November 30, 1988, Defendant's Exhibit A states:
"Re: Ford v. Ford
Dear Joe,
 In light of our discussion in the courthouse lobby today (11/30) about how judges are fighting over you time, I thought I would reclaim my motions in order to let us get back on the family court calendar. I would expect we would proceed on your motions simultaneously.
 Please note that Mr. Ford is now about 3 months in arrears on the $50/week payments he was making; if they are not brought current I will have to be more insistent about proceeding.
Very truly yours,
S/Louis Parley Louis Parley"
The second letter dated May 8, 1989, Defendant's Exhibit B states:
"Re: Ford v. Ford
Dear Joe,
 Enclosed are copies of slips reclaiming my motions for contempt and modification. I intend to try to proceed with the contempt as Tom has not ever been paying the child support.
 As far as discovery on the beauty salon is concerned, I do not think that the fact that our clients' daughter now works there changes the ownership issues, so you should reclaim your motion. Very truly CT Page 1214 yours,
S/Louis I. Parley Louis I. Parley"
The defendant argues that both letters from Attorney Parley do not mention the alimony payments, which were not being made at the time, when it would have been logical for him to do so; hence there must have been an agreement that the payments did not have to be made.
At the earlier hearing which was the subject of Ford vs. Ford, supra, Attorney Parley testified that he had no recollection of an agreement made with Attorney Chiarelli to suspend alimony payments. At the hearing before this court, Attorney Parley reviewed the two letters, Defendant's Exhibit A B, and recalled that Mr. Ford wanted to modify his alimony obligations and was only paying $50.00 per week. Attorney Parley testified he was having difficulty getting the case back into court for two reasons; "Attorney Chiarelli was unavailable because of his heavy trial schedule and Mrs. Ford was resisting to submitting to the deposition. Under these conditions, Attorney Parley stated he "grudgingly acquiesced" to a payment of $50.00 per week. He agreed that as long as the $50.00 per week payments were made he would not insist on going forward with his motions for contempt and modification. Attorney Parley did not recall any specific conversation or agreement with Attorney Chiarelli regarding suspension of alimony. He also testified that he would not enter into an agreement to suspend alimony without authorization from his client.
The defendant testified that soon after the June 4, 1988 deposition, Attorney Chiarelli told him he would not have to pay alimony until the continued deposition was held. The plaintiff testified she never discussed an agreement to suspend her alimony with Attorney Parley and she never authorized him to enter into such an agreement.
The court must decide if an agreement to suspend alimony came into existence in 1988. "The existence of a contract is a question of fact to be determined by the trier on the basis of all of the evidence." Fortierv. Newington Group, Inc., 30 Conn. App. 505, 509 (1993). The case ofLR Realty v. Connecticut National Bank, 53 Conn. App. 524 (1999) dealt with the existence of an alleged oral agreement and the Appellate Court stated:
 "This court does not retry the case or evaluate the credibility of the witnesses. . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude . CT Page 1215 . . In a case that is tried to the court, such as the present case, the judge is the sole arbiter of the credibility of witnesses, and the weight to be given to their specific testimony.". . .Arena v. Commissioner of Correction, 51 Conn. App. 505, 507, 723 A.2d 1155 (1999). "As such, the trial court is free to accept or reject, in whole or in part, the evidence presented by any witness, having the opportunity to observe the witnesses and gauge their credibility . . . In considering the evidence introduced in a case, [triers of fact] are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts in hand, to the end that their action may be intelligent and their conclusions correct.". . .State v. Sandra O., 51 Conn. App. 463, 468, 724 A.2d 1127 (1999). Id. 535
After reviewing the exhibits and carefully considering the testimony and demeanor of the witnesses, the court concludes that the defendant has failed to prove by a preponderance of the evidence the existence of an agreement which affects his obligation to comply with the alimony order.
The only direct evidence of the existence of an agreement to suspend alimony was the testimony of Attorney Chiarelli and the echoing testimony of the defendant, Mr. Ford. The defendant points to the two letters written by Attorney Parley as circumstantial evidence of an agreement to suspend alimony, because alimony payments were not mentioned therein.The court concludes that the letters, in fact, support Attorney Parley's recollection that he agreed not to go forward with his motions until the deposition was concluded, so long as the $50.00 per week payments were made.
The letter of November 30, 1988 alludes to the fact that Attorney Chiarelli was experiencing a busy court schedule. According to the letter Mr. Ford was not making the $50.00 per week payments; consequently, as indicated, Attorney Parley was going forward with his motions by reclaiming them. Although it is not specifically mentioned, it is reasonable to conclude, for two reasons, that alimony would have been addressed at the family short calendar. First, Attorney Parley mentions "motions" which the court infers mean the motion to modify and the motion for contempt which relate to alimony. Second, the letter refers to Attorney Chiarelli proceeding on his "motions" which the court infers mean the defendant's motion to modify alimony. CT Page 1216
The letter of May 8, 1989 makes reference to non payment of child support and also refers to the reclaim of the plaintiff's motions for contempt and modification which pertain to alimony. Attorney Parley also, again, invites Attorney Chiarelli to reclaim his motion.
It is undisputed that the continued deposition had not been held at the time the two letters were written. Both letters persuade the court that Attorney Parley intended to bring the subject of alimony and the fact that Mr. Ford was not paying it, to the attention of a family short calendar judge. Such action would be inconsistent with an agreement, if one existed, that alimony would not have to be paid so long as the continued deposition was not held. There was no evidence that the defendant challenged the propriety of the initiatives that Attorney Parley made in 1988 and 1989.
The court believes that Attorney Chiarelli testified truthfully as to what he believed was the substance of the agreement he made with Attorney Parley in June of 1988; however, after considering all the evidence and the surrounding circumstances, the court cannot conclude that there came into existence an agreement which would relieve the defendant of his alimony obligation. In 1988 Attorney Chiarelli and Attorney Parley were both experienced in family matters and the court does not believe that they would rely only on their recollections to prove the existence of an agreement that, potentially, would be of great benefit to one of the parties and would cause great harm to the other.
Even if an agreement to suspend alimony did exist, without court approval it would not relieve the defendant of his obligation. ". . .[A] support order can only be modified by the court. General Statutes § 46b-86a." Brock v. Cavanaugh, 1 Conn. App. 138, 141 (1984). It is noted that § 46b-86a also specifically mentions orders of alimony. "An order of the court must be obeyed until it has been modified or successfully challenged." (Citations omitted) Eldridge v. Eldridge,244 Conn. 523, 530 (1998). See also Lownds v. Lownds, 41 Conn. Sup. 100
(1988) (written agreement to reduce unallocated alimony and support cannot modify order in the absence of court approval).
In his brief the defendant argues that the plaintiff has waived her right to seek enforcement of the alimony order. "Waiver involves an intentional relinquishment of a known right. . . .Whether conduct constitutes a waiver is a question of fact." (Citations and internal quotation marks omitted) Fisette v. Dipietro, 28 Conn. App. 379, 385
(1992). From the time of the plaintiff's original deposition, June 4, 1988, to the date she renewed her efforts to have the defendant found in contempt, January 24, 1996, approximately seven and a half years CT Page 1217 elapsed. The plaintiff testified that during that time she experienced serious health and financial problems. In 1988 she had surgery to remove a lung and in either 1991 or 1992 she had back surgery for a ruptured disk. She has a history of cervical cancer, lung cancer and depression. During this period the plaintiff had to borrow money and for part of the time she was financially dependent on her father for her living expenses. She stated she did not have the money for a lawyer. Considering the credible testimony of the plaintiff, the court cannot conclude that she waived her right to pursue payment of the sum accruing under the alimony order.
By agreement dated November 28, 2000, the parties stipulated that the mathematical arrearage on the alimony order as of November 28, 2000 was $105,230.00.
The court finds that as of November 28, 2000 there is an arrearage on the defendant's alimony obligation to the plaintiff in the amount of $105,230.00 and further finds that the alimony order and the order regarding life insurance remain in effect. In accordance with the plaintiff's request, no finding of contempt has been considered at this time. There was no evidence presented regarding attorneys fees, consequently the court takes no action on that request. The parties are directed to discuss payment of the arrearage and if the plaintiff believes satisfactory arrangements have not been made, the plaintiff may bring the matter to the attention of the court.
Domnarski, J.