[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO DISMISS
 I FACTUAL AND PROCEDURAL HISTORY
In the above-captioned matter, William H. Honan and his three children[1] (the plaintiffs), brought a nine count complaint, dated January 18, 2000 and returnable on February 29, 2000 against Attorney Joseph Dimyan, Attorney Thomas Maxwell and against the Honorable Howard J. Moraghan, the Honorable Dale Radcliffe and the Honorable Patrick Carroll (the judicial defendants). With the exception of the judicial defendants, Maxwell and Dimyan's law firm, the parties in this action are the same parties who were involved in William H.Honan, et al. v. Joseph Dimyan et al., CV90 301879 which was tried to a jury in front of the Honorable Edward Stodolink and resulted in a defendants' verdict on all counts.[2] The judgment of the CT Page 15091 trial court was later affirmed on appeal in Honan v. Dimyan,52 Conn. App. 123, cert denied, 249 Conn. 909 (1999) (Honan I). The plaintiffs in Honan I were represented by Attorney Nancy Burton, who also represents them in this action. Maxwell represented Dimyan in Honan I both at trial and on appeal.
In their complaint, the plaintiffs allege, inter alia, that Honan I "was meritorious; on the facts and the law, [and] the Plaintiffs should have prevailed on all counts" (First Count, ¶ 2); that Judge Stodolink "possessed a deep and pernicious bias against Plaintiffs and their counsel . . . such that he should have disqualified himself from the trial" (First Count, ¶ 5) and that his "actual bias . . . prejudiced the jury against the Plaintiffs" (First Count, ¶ 8). Due to the trial judge's alleged misconduct, the plaintiffs "request that the Court, sifting as a court of equity, enjoin the enforcement of the judgment in `Honan I' and order a new trial before an impartial tribunal." (First Count, ¶ 12.) On January 18, 2000, the plaintiffs applied for a temporary injunction to restrain the enforcement of Honan I, but the application was denied, ex parte, on February 4, 2000 by Axelrod, J.[3]
The plaintiffs further allege, that "[b]efore, during [and] after the trial of `Honan I,' . . . Dimyan . . . Maxwell and [Judge] Howard J. Moraghan conspired to intimidate the Plaintiffs and obstruct and impede their right of access to the Court. . . ." (Second Count, ¶ 13), and that during the course of the Honan I trial, Dimyan and Maxwell engaged in "misconduct" (Second Count, ¶ 17) when they "caused subpoenas to be served on individuals primarily to vex them and the Plaintiffs." (Third Count, ¶ 15.) The plaintiffs also allege that Dimyan and Maxwell engaged in misconduct when they "filed a bill of costs seeking to recover costs in the Appellate Court for the Honan I proceedings." (Sixth Count, ¶ 26.)
On March 22, 2000 the judicial defendants filed a Request to Revise the plaintiffs' complaint in which the judicial defendants requested five specific revisions to the complaint. Dimyan and Maxwell also filed Requests to Revise, dated March 27 and April 24, 2000, respectively, in which each sought fifteen specific revisions. The plaintiffs responded by filing an objection, dated April 24, 2000, in which the plaintiffs answered each requested change by each defendant by saying that "[t]he allegation is legally and factually sufficient such that the defendant[s] can plead intelligibly to the complaint." The objection was scheduled to be heard on the short calendar for May 15, 2000, but the plaintiffs never marked it ready for argument or reclaimed it at a later date. In addition, the plaintiffs have subsequently failed to revise the complaint. CT Page 15092
The judicial defendants, Maxwell and Dimyan, on March 1, March 7 and March 23, 2001, respectively, filed Motions to Dismiss with supporting memoranda of law, pursuant to Practice Book § 14-3, for the plaintiffs' alleged failure to prosecute with due diligence. In response, the plaintiffs, on March 14, 2001, filed a document entitled "Objection To Motion To Dismiss," but did not file a supporting memorandum of law. The plaintiffs also filed a Motion for Partial Summary Judgment, dated August 11, 2001, pursuant to Practice Book § 17-44 in which they seek a judgment in their favor regarding the first count of the complaint. In support of the Motion for Partial Summary Judgment, the plaintiffs submitted the required brief, an affidavit, dated August 11, 2001, from William H. Honan (the Honan affidavit) and a January 28, 1999 transcript of deposition testimony given by Judge Stodolink (the Stodolink deposition).[4] The Motions to Dismiss and Motion for Partial Summary Judgment were argued by the parties before this court on September 4, 2001. Additional facts and procedural history of this case will be provided as necessary.
For the reasons cited in Part II of this opinion, the court rules as follows: First, the court grants all the defendants' Practice Book §14-3 Motions to Dismiss for the plaintiffs' failure to prosecute with due diligence and dismisses the complaint in its entirety. Second, the court hereby treats the original Motions to Dismiss filed by Dimyan and Maxwell as Practice Book § 10-31(a)(1) Motions to Dismiss in regard to counts one, two, three and six of the complaint. Since the aforementioned Motions to Dismiss are meritorious and implicate issues of res judicata, the court, in lieu of entering an order of dismissal, hereby grants partial summary judgment in favor of Dimyan and Maxwell. Third, the court hereby treats the judicial defendants' original Motion to Dismiss as a Practice Book § 10-31(a)(1) Motion to Dismiss in regard to counts two and seven of the complaint. Said Motion is hereby granted in favor of the judicial defendants.
In light of the court's ruling on all the defendants' Practice Book § 14-3 Motions to Dismiss and said original Motions insofar as they are treated as Practice Book § 10-31(a)(1) Motions to Dismiss,[5]
the plaintiffs' Motion for Partial Summary Judgment in regard to the first count of the complaint is moot.
 II DISCUSSION
A. MOTION TO DISMISS FOR LACK OF DUE DILIGENCE CT Page 15093
The plaintiffs initiated this action against all the defendants by Writ, Summons and Complaint dated January 18, 2000 and returnable to court on February 29, 2000. Thereafter, the judicial defendants as well as Dimyan and Maxwell filed a Request to Revise, pursuant to Practice Book § 10-35, on March 22, March 27 and April 4, 2000, respectively. The plaintiffs filed a timely objection, pursuant to Practice Book §10-36, in which they responded to each requested revision simply by saying that "[t]he allegation is legally and factually sufficient such that the defendant[s] can plead intelligibly to the complaint" or word of similar meaning. Pursuant to Practice Book § 10-36, the objection was scheduled for argument on the short calendar for May 15, 2000. The plaintiffs never marked the objection ready for argument, reclaimed it or made the requested revisions in lieu of making an argument in support of their objection.
The next time there was any activity in the file was on March 1, 2001 when the judicial defendants filed their Motion to Dismiss pursuant to Practice Book § 14-3, and Maxwell and Dimyan each filed the same Motion on March 7 and March 23, 2001, respectively. Thus, there was more than a ten month gap between the May 15, 2000 scheduled short calendar argument on the plaintiffs' objection to the Requests to Revise and the last Practice Book § 14-3 Motion to Dismiss filed on March 23, 2001. The plaintiffs failed or neglected to either mark their objection ready for argument on the short calendar, reclaim it or revise their complaint. A Request to Revise is "deemed to have been automatically granted . . . and shall be complied with by the party to whom it is directed . . . unless . . . the party to whom it is directed files an objection. . . ." Practice Book § 10-37(a). Such objection, if overruled by the court, obligates the pleader to file a substitute pleading in compliance with the court's order. See Practice Book §10-37(b). Thus, the defendants were entitled to their requested revisions unless the plaintiffs pursued their objection which, of course, they failed to do. Further, the court has reviewed the various Requests to Revise, the complaint and the plaintiffs' objections to the requests and finds that the objection is without merit. The plaintiffs' written objection to the defendants' requested revisions, i.e., that "the allegations are legally and factually sufficient" is a "boilerplate," non-responsive answer which is devoid of content. The plaintiffs are obligated to file a complaint which "contain[s] a plain concise statement of the material fact[s]. . . ." Practice Book § 10-1. The court finds that the complaint is virtually devoid of any material facts upon which the plaintiffs can rely. For example, the plaintiff's claim that Dimyan, Maxwell and Judge Moraghan at various times "conspired to intimidate the plaintiffs and obstruct and impede their right of access to the Court" (Second Count, ¶ 13), but the plaintiffs never state any material facts to show how the conspiracy and obstruction took place. The CT Page 15094 defendants are entitled to a statement of these material facts so they can proceed with their defense. As mentioned earlier, for more than ten months the plaintiffs did nothing to argue their objection to the defendants' Requests to Revise, even though such requests are deemed granted in the absence of an objection which the court deems valid. The court also notes that despite indicating in their March 14, 2001 "Objection to Motions to Dismiss" that "[t]he plaintiffs. . . . are prepared to reclaim the objection [to the Requests to Revise] and will do so forthwith," the plaintiffs as of this date have failed to reclaim the objection for argument. Again, the objection to the Requests to Revise is dated April 24, 2000 and was scheduled for short calendar argument on May 15, 2000, more than fifteen months prior to the date of this Memorandum of Decision.
All the defendants seek a dismissal of the complaint pursuant to Practice Book § 14-3(a) which, in relevant part, says that "[i]f a party shall fail to prosecute an action with reasonable diligence, the judicial authority may, after hearing, on motion by any party . . . or on its own motion, render a judgment dismissing the action with costs." This rule of practice "reflects the judicial branch's interest in having counsel prosecute actions with reasonable diligence. Judges, faced with case flow management concerns, must enforce the pace of litigation coming before the court, rather than allowing the parties to do so." (Internal quotation marks omitted.) Gillum v. Yale University, 62 Conn. App. 775,786 (2001), quoting Gionfrido v. WharfRealty, Inc., 193 Conn. 28, 33
(1984). "The ultimate determination regarding a motion to dismiss for lack of diligence is within the sound discretion of the court. The discretion is properly exercised if the case has been on the docket for an unduly protracted period or the court is satisfied from the record or otherwise that there is no real intent to prosecute. . . ." Nickerson v.Gachim, 183 Conn. 413, 415 (1981). The court is satisfied that this case has languished on the docket for a protracted period of time due to the plaintiffs' neglect and that the plaintiffs have no genuine interest in prosecuting the action based on their failure to revise their complaint to include material facts or to argue legitimate objections to the requested revisions. Our rules of practice say that "pleadings, motions and requests shall advance at least one step within each successive period of fifteen days." Practice Book § 10-8. This case sat dormant between May 15, 2000 and March 1, 2001 because the plaintiffs did not move it forward. The defendants' Motions to Dismiss for Failure to Prosecute pursuant to Practice Book § 14-3 are granted, and the complaint is dismissed in its entirety.
B. DISMISSAL REGARDING RES JUDICATA CLAIMS
In addition to the court's decision regarding the Practice Book § CT Page 1509514-3 Motions to Dismiss, the court also decides those Motions to Dismiss as Motions to Dismiss pursuant to Practice Book § 10-31(a)(1). The text of Practice Book § 10-31(a)(1) mandates that a motion to dismiss "shall be used to assert (1) lack of jurisdiction over the subject matter. . . . [t]his motion shall always be filed with a supporting memorandum of law, and where appropriate, with supporting affidavits as to facts not apparent on the record." The issue of subject matter jurisdiction "addresses the basic competency of the court, [and] can be raised by any of the parties, or by the court sua sponte, at any time." Daley v. Hartford, 215 Conn. 14, 27-28 (1990). The court's standard of review for a motion to dismiss is well established. "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . Furthermore, it is the law in our courts, as it is in the federal courts, that [a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." (Citation omitted; internal quotation marks omitted.) Villager Pond,Inc. v. Darien, 54 Conn. App. 178, 183 (1999). After reviewing the allegations of the complaint, as well as the Honan affidavit and the Stodolink deposition submitted in connection with the plaintiffs' Motion for Partial Summary Judgment, it is clear to the court that in viewing the pleadings and other materials in the case file in the light most favorable to the plaintiffs, the plaintiffs are not entitled to relief under any set of facts that could be proved consistent with the allegations of the complaint. The court will first address the Practice Book § 10-31(1) Motion to Dismiss as it pertains to Dimyan and Maxwell and then address it as it pertains to the judicial defendants.
As indicated in Part I of this opinion, the plaintiff's claim in the first count of their complaint that they should have prevailed at trial and on appeal in Honan I and would have succeeded on the merits at trial, but for the misconduct of the trial judge, Judge Stodolink. The plaintiffs also claim in count two of the complaint that Dimyan and Maxwell engaged in misconduct aimed at obstructing their right to pursue their Honan I causes of action and that Dimyan and Maxwell abused the legal process by serving subpoenas on unnamed individuals in connection with their defense in Honan I. Finally, the plaintiff's claim that Dimyan and Maxwell engaged in misconduct by attempting to recover costs for the Honan I proceedings after they prevailed in the Appellate Court. Even if the court assumes that all of the aforementioned wrongdoing occurred, the plaintiffs still could not prevail because the issue of whether Judge Stodolink, Dimyan and Maxwell engaged in misconduct in connection with Honan I was decided against the plaintiffs on the merits in Honan I itself In Honan I, the Appellate Court said `[t]he plaintiffs' final CT Page 15096 claim is that the trial court improperly denied their motion for a new trial, which they based on the purported misconduct of both the trial court judge and defense counsel. We disagree . . . [i]n their appellate brief, the plaintiffs recite a hodgepodge of at least twelve specific instances of purported misconduct and procedural irregularity. These claims are largely unsupported by analysis or legal authority. In fact, while many of the specific instances cited occurred outside the presence of the jury, some occurred outside the courthouse itself The plaintiff's claim that this conduct "was so prejudicial as to have deprived [them] of a fair trial.' After an examination of the specific instances cited, however, we cannot say that the plaintiffs were denied a fair trial." Honan I, supra, 135. Thus, in Honan I, the Appellate Court considered the alleged misconduct by Judge Stodolink, Dimyan and Maxwell and indicated that despite such alleged misconduct, the plaintiffs received a fair trial.
It therefore appears that the plaintiffs are barred from pursuing their claims regarding misconduct by Judge Stodolink, Dimyan and Maxwell in counts one, two and three of the complaint by the doctrine of res judicata. "[T]he doctrine of res judicata, or claim preclusion, [provides that] a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose. . . . The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." (Citations omitted; internal quotation marks omitted.) Milford v.Andresakis, 52 Conn. App. 454, 462-463 (1999), quoting Delahunty v.Massachusetts Mutual Life Ins. Co., 236 Conn. 582, 589, (1996). If there was any room for doubt that the Appellate Court had dealt with the misconduct issue in Honan I, that doubt was erased when it rendered its decision in Honan v. Dimyan, 63 Conn. App. 702 (2001) (Honan II) regarding the claimed judicial misconduct in awarding costs to Dimyan and Maxwell.
Honan II involved that same parties as were involved in Honan I. In Honan II, the plaintiffs claimed that Judge Stodolink improperly refused to disqualify himself during Honan I, that he improperly refused to disqualify himself from hearing the claim of Dimyan and Maxwell for costs in connection with the appeal in Honan I and that he erroneously awarded the requested costs. In Honan II, the Appellate Court said that "[t]he plaintiffs had an opportunity to litigate fully the matter of judicial misconduct. . . . Whether Judge Stodolink should have been disqualified for allegedly permitting misconduct to occur during trial was decided by this court in the plaintiffs' previous appeal [in Honan I]. In that CT Page 15097 case, we concluded that the alleged misconduct was not so prejudicial as to deprive the plaintiffs of a fair trial . . . [w]e will not permit the plaintiffs to relitigate the matter." Honan II, supra, 710. It should be noted that at the time the Appellate Court issued its decision in Honan II, it was aware of the plaintiffs' allegation that Judge Stodolink had admitted misconduct in Honan I in the Stodolink deposition.[6] Despite this knowledge, the Court still refused to reconsider the claimed misconduct. Further, the Honan II court rejected the plaintiffs' claim that the trial court had improperly awarded costs related to the appeal in Honan I.[7] In short, when Honan I and Honan II are read together, it is crystal clear that the issue regarding judicial and attorney misconduct was disposed of on the merits and cannot be resurrected
The plaintiffs in this, the third case in the Honan v. Dimyan trilogy, are making a collateral attack on a final judgment with which they disagree. While it is true that "[r]es judicata does not provide the basis for a judgment of dismissal. Labbe v. Pension Commission,229 Conn. 801, 816 (1994), it does provide the basis for a court to grant summary judgment when a litigant in a subsequent proceeding cannot show that the court in the prior proceeding(s) lacked subject matter jurisdiction. See Feuerman v. Feuerman, 62 Conn. App. 332 (2001). In other words, "[u]nless a litigant can show an absence of subject matter jurisdiction that makes the prior judgment of a tribunal entirely invalid, he or she [is limited to] resort[ing] to direct proceedings [i.e., an appeal] to correct perceived wrongs in the tribunal's conclusive decision. . . . A collateral attack on a judgment is . . . procedurally impermissible. . . ." (Citation omitted; internal quotation marks omitted.) Joe's Pizza, Inc. v. Aetna Life and Casualty Co.,236 Conn. 863, 876 (1996). In Joe's Pizza, Inc., the trial court, in an earlier action, rendered a judgment declaring that the defendant insurance company did not have to provide insurance coverage for the plaintiff restaurant. The plaintiff then brought a contract action against the defendant seeking payment on the insurance policy. Our Supreme Court barred this collateral attack and affirmed the trial court's order of summary judgment on the basis of res judicata. In Feuerman, supra, the Appellate Court indicated that the trial court, in lieu of entering a judgment of dismissal for lack of subject matter jurisdiction in a subsequent action implicating the doctrine of res judicata, should enter summary judgment in favor of the party who filed a motion to dismiss.
In this case, the plaintiffs cannot show that the trial court in Honan I or Honan II lacked subject matter jurisdiction due to misconduct. In fact, as already indicated, the Appellate Court rejected the misconduct claim in both Honan I and Honan II in which the plaintiffs took a direct appeal. The plaintiffs' attempt to collaterally attack the outcome of those prior cases on the issue of misconduct is impermissible. CT Page 15098 Therefore, as previously indicated, the court grants partial summary judgment in favor of Dimyan and Maxwell regarding the first, second, third and sixth counts of the complaint.
C. THE JUDICIAL DEFENDANTS
The plaintiffs allege in the second count of their complaint that Judge Moraghan at various times conspired with Dimyan and Maxwell to intimidate, obstruct and impede them in the pursuit of their claims in the trial of Honan I. Despite the fact that the complaint does not allege any material facts regarding how Judge Moraghan engaged in such misconduct, it is apparent from the Honan affidavit and Stodolink deposition that the plaintiffs focus their misconduct claims against Judge Moraghan on his alleged behavior in the courtroom during the trial of Honan I. For example, paragraph eleven of the Honan affidavit avers that "[d]uring the [trial] proceedings[,] [in Honan I] Judge Moraghan behaved in an obstreperous manner as a spectator and his antics interfered with the testimony of Milton Burton, the plaintiffs' witness and weakened his testimony against Dimyan." Judge Stodolink testified in the Stodolink deposition that Judge Moraghan sat in the public section of the courtroom on no more than three occasions during the trial of Honan I and that as he, Judge Stodolink, presided over the trial on those occasions, he did not observe Judge Moraghan do anything that was disorderly, obnoxious or obstreperous (Tr. pp. 19-21). Hence, it is clear from reading the complaint, as well as the Honan affidavit and Stodolink deposition submitted in support of the plaintiffs' Motion for Partial Summary Judgment, that plaintiffs' claims against Judge Moraghan are based on his alleged behavior in the courtroom during times when court was in session. The plaintiffs seek money damages against Judge Moraghan for his alleged wrongful conduct. (First Count, ¶ 15.)
In the seventh count of the complaint, the plaintiffs further claim that Judges Radcliffe and Carroll, both "sitting judges of the Superior Court for the Judicial District of Danbury" (¶ 1), the jurisdiction where Honan I was tried, "both . . . harbor a pernicious bias against Plaintiff's counsel and have acted upon such bias to prejudice the Plaintiffs." (¶ 2.) There are, however, absolutely no allegations of material facts anywhere in the seventh count regarding any acts of pernicious bias by the judges. The plaintiffs go on to claim that their "[c]onstitutional rights will be violated if they are subject to exercising their rights before Judge Radcliffe and Judge Carroll" (¶ 3), but fail to allege any material facts regarding how their rights will be violated. The plaintiffs "seek an order enjoining Judge Radcliffe and Judge Carroll from presiding over any action in which they are parties, now and forever." (¶ 4.) CT Page 15099
The judicial defendants seek a dismissal based on the doctrine of judicial and sovereign immunity. They argue that judges have general immunity from suit and that this suit against the judicial defendants in their official capacity is, in effect, a suit against the state, which cannot be maintained without a legislative waiver of sovereign immunity. The plaintiffs, in their "Objection to Motions to Dismiss, "respond to the judicial defendants' arguments by simply saying that "the doctrine of judicial immunity does not bar a suit seeking injunctive relief in an appropriate case, such as the instant case." They cite no legal authority to support their claim, and, as previously mentioned, did not submit a brief in opposition to the Motion to Dismiss as required by the rules of practice. The plaintiff asks that the Motion to Dismiss be denied. The court agrees with the judicial defendants and therefore grants their Motion. The court will first address the Motion as it pertains to Judge Moraghan, individually, and then as it pertains to the remaining judicial defendants.
The doctrine of judicial immunity is "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself . . . For that reason . . . judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." Stump v. Sparkman, 435 U.S. 349, 355. (Citations omitted; internal quotation marks omitted.) The United States Supreme Court has further recognized that "judicial immunity is an immunity from suit, not just from ultimate assessment of damages." Mireles v. Waco, 502 U.S. 9,11 (1991). Further, there are only two circumstances in which a judge loses the protection of judicial immunity. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. . . . Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. . . ." Id., 11-12. (Citations omitted; internal quotation marks omitted.) A judge who is acting as a judge, therefore, is immune from civil actions generally and only loses that immunity under exceptional circumstances. Unless one of the exceptional circumstances applies, judicial immunity deprives a court of subject matter jurisdiction to hear a civil action against a judicial officer who is sued in his official capacity.
The concept of subject matter jurisdiction "involves the authority of a court to adjudicate the type of controversy presented by the action before it." Amodio v. Amodio, 247 Conn. 724, 727 (1999). Our Connecticut Supreme Court has adopted the principles of judicial immunity and applied CT Page 15100 them in the context of judicial proceedings in this state. See Spring v.Constantino, 168 Conn. 563 (1975). Since the doctrine of judicial immunity implicates the issue of subject matter jurisdiction, it is appropriate to apply the doctrine to dismiss any case in which it deprives the court of subject matter jurisdiction. The pleadings, the Honan affidavit and the Stodolink deposition, all make it very clear that the plaintiffs' misconduct claim against Judge Moraghan focuses on what he allegedly did while in a courtroom, at a time when he was employed as a judge, during the trial of a case and in the jurisdiction where he was then sitting. The conduct of Judge Moraghan at that time, therefore, is within the scope of the doctrine of judicial immunity. It does not matter that he apparently was not wearing a robe, was not on the bench and was seated as a spectator in the public area of the courtroom. Under the circumstances of this case, the doctrine of judicial immunity shields Judge Moraghan from the obligation to pay the plaintiffs' damages or even to defend against their lawsuit. He was no less of a judge at the time and place of the alleged conduct than he would have been had he actually presided over the trial in Honan I. The plaintiffs do not allege that Judge Moraghan did anything outside of his role as a judge or that he exercised any jurisdiction at all while he was present in the courtroom. Since Judge Moraghan was acting as a judicial officer at the time of the alleged conduct and there is no claim that he performed a judicial function totally in the absence of any jurisdiction to do so, he is immune from suit under the circumstances. The claim against Judge Moraghan in the second count of the complaint is therefore dismissed.
The doctrine of sovereign immunity, like the doctrine of judicial immunity, implicates subject matter jurisdiction and is grounds for granting a motion to dismiss." Amore v. Frankel, 29 Conn. App. 565, 568
(1992). "The common law doctrine of sovereign immunity dictates that suits against the state can be maintained only in exceptional circumstances." Id. "[S]ince the state can act only through its officers and agents a suit against a state officer is in effect one against the sovereign state." Horton v. Meskill, 172 Conn. 615, 623 (1977). "[T]he sovereign is immune from suit unless the state, by appropriate legislation, consents to be sued . . . [s]tatutes in derogation of sovereignty should be strictly construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed. . . ." (Citations omitted; internal quotation marks omitted.) Berger, LehmanAssociates, Inc. v. State, 178 Conn. 352, 356 (1979). "[I]n determining the effect of sovereign immunity . . . [i]f the complaint alleges facts sufficient to invoke a statutory waiver of [sovereign] immunity, then the trial court cannot properly grant a motion to dismiss solely on the basis of sovereign immunity." Amore v. Frankel, supra, 29 Conn. App. 568. The doctrine of sovereign immunity, therefore, is a basis for dismissal of a suit against a state official unless there is a clear legislative waiver CT Page 15101 in which the state consents to be sued. The court must, as mandated by the aforementioned case law, look to the complaint to ascertain whether the plaintiffs have invoked a statutory waiver of the sovereign immunity which would apply to the judicial defendants as state officers. The court finds that there is no such invocation of a clear statutory waiver of sovereign immunity which would permit the plaintiffs to sue Judges Radcliffe and Carroll for injunctive relief. Nowhere in count seven of the complaint do the plaintiffs rely on a statutory waiver of sovereign immunity which would permit the present action to go forward. This failure to rely on a specific waiver of sovereign immunity is fatal to the plaintiffs' case.
At oral argument, on September 4, 2001, counsel for the plaintiffs claimed that her clients are entitled to injunctive relief against judicial authorities even when they act in their official capacities. In support of this proposition, she cited Pulliam v. Allen, 466 U.S. 522
(1984). In that case, the United States Supreme Court decided that the common law doctrine of judicial immunity does not completely insulate state court judges from prospective collateral relief within the context of lawsuits brought pursuant to 42 U.S.C. § 1983. It is true that in limited circumstances "[s]overeign immunity does not bar suits against state officials acting in excess of their statutory authority or pursuant to an unconstitutional statute. . . . In those cases in which it is alleged that the defendant officer is proceeding . . . in excess of his statutory authority, the interest in the protection of the plaintiffs right to be free from the consequences of such action outweighs the interest served by the sovereign immunity doctrine. . . . In such instances, the need to protect the government simply does not arise and the government cannot justifiably claim interference with its functions. . . . Where [however] no substantial claim is made that the defendant officer is acting pursuant to an unconstitutional enactment or in excess of his statutory authority, the purpose of the sovereign immunity doctrine requires dismissal of the suit for want of jurisdiction." (Citations omitted; internal quotation marks omitted.) Antinerella v.Roux, 229 Conn. 479, 487 (1994). In this case, there is absolutely nothing in the complaint alleging that Judge Radcliffe or Judge Carroll did anything in excess of the authority he possesses under a particular statute, nor is there any allegation that he acted in regard to the plaintiff pursuant to an unconstitutional statute. There simply is no basis upon which this court has authority to permit the plaintiffs to proceed with the allegations against Judge Radcliffe or Judge Carroll. Since there is no jurisdictional basis for this court to grant the plaintiffs' request for injunctive relief against the two judges, the seventh count of the complaint must be dismissed.
In addition to the plaintiffs' failure to allege any jurisdictional CT Page 15102 basis for this court to permit their claim against Judge Radcliffe and Judge Carroll, the court must dismiss the seventh count of plaintiffs' complaint because it, in effect, asks that those two judges be permanently disqualified from hearing any matters involving the plaintiffs or their counsel. Even if the plaintiffs alleged material facts to justify the relief sought, which they do not, this court does not have authority to grant the relief sought by the plaintiffs. The plaintiffs base their request on the claim that each of these judges harbors a "pernicious bias" against their attorney and that each has acted upon such bias to the plaintiffs' prejudice. "Accusations of judicial bias or misconduct implicate the basic concepts of a fair trial. . . . The appearance as well as the actuality of [partiality] on the part of the trier will suffice to constitute proof of bias sufficient to warrant disqualification. . . . Canon 3(c)(1) provides in relevant part: A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (A) the judge has a personal bias or prejudice concerning a party. . . ." (Citation omitted; internal quotation marks omitted.) State v. Montini, 52 Conn. App. 682, 694, cert. denied,249 Conn. 909, (1999). The proper procedure for disqualifying a judge is spelled out in Practice Book § 1-23, which provides that "[a] motion to disqualify a judicial authority shall be in writing and shall be accompanied by an affidavit setting forth the facts relied upon to show the grounds for disqualification and a certificate of the counsel of record that the motion is made in good faith. The motion shall be filed no less than ten days before the time the case is called for trial or hearing, unless good cause is shown for failure to file within such time." Thus, before a judge is subject to disqualification, the plaintiffs must file a written motion, accompanied by an affidavit outlining facts in support of the motion and a good faith certificate filed by counsel. These prerequisites to recusal must be directed to the judge against whom recusal is sought. The Appellate Court has held that "[t]he matter of a judge's recusal is in the reasonable discretion of that judge, and . . . [t]he decision to recuse oneself is an intrinsic part of the independence of a judge. Any attempt to instruct or order a judge . . . violates the independence of judges individually and the judiciary as a whole." Consiglio v. Consiglio, 48 Conn. App. 654, 661-662
(1998). Therefore, it would be improper for this court to order Judge Radcliffe or Judge Carroll to recuse himself permanently from matters involving the plaintiffs. Any such order would violate the independence of each of those judges as well as the independence of the judiciary as a whole. The plaintiffs must file their motions to recuse each of those judges with those judges individually. This court has no jurisdiction to grant the plaintiffs the relief they request. Count seven of the complaint is dismissed. CT Page 15103
 III CONCLUSION
The plaintiffs have failed to pursue their cause of action with due diligence and therefore, their complaint is dismissed in its entirety against all the defendants. Further, the first, second, third and sixth counts of the complaint make claims against Dimyan and Maxwell which are barred by the doctrine of res judicata. In lieu of granting a dismissal in regard to those counts, the court grants partial summary judgment in favor of Dimyan and Maxwell. Hence, the plaintiffs' Motion for Partial Summary Judgment regarding the first count of the complaint is moot. The court also orders a dismissal in favor of Judge Moraghan on count two of the complaint based on the doctrine of judicial immunity and a judgment of dismissal in favor of Judge Radcliffe and Judge Carroll on count seven of the complaint based on the doctrines of sovereign immunity and judicial independence.
White, J.[8]