## ERIC SAPPER *v.* JANE M. SAPPER
## (AC 28272)

DiPentima, Gruendel and Mihalakos, Js.

---

Argued April 23—officially released July 8, 2008

*William S. Palmieri*, for the appellant (plaintiff).

*Donald W. Celotto, Jr.*, for the appellee (defendant).

*Noah Eisenhandler*, for the minor children.

*Thomas A. Esposito*, guardian ad litem for the minor children.

### Opinion

GRUENDEL, J. The plaintiff, Eric Sapper, appeals from the judgment of the trial court dissolving his marriage to the defendant, Jane M. Sapper. On appeal, he claims that the court (1) exhibited bias against him at trial and in its memorandum of decision and (2) abused its discretion in entering certain financial orders. We reject the first claim and disagree with the second claim, thus affirming the judgment of the trial court.

The parties married in March, 1988, and subsequently had two children, who were ages fourteen and fifteen at the time this dissolution action commenced in the fall of 2004.[1] The matter proceeded to trial nearly two years later on September 11, 2006, and totaled three days.[2] By memorandum of decision filed October 18,

---

[1] Pursuant to Practice Book § 67-13, the guardian ad litem for the minor children filed a statement adopting the brief of the defendant in this appeal. It stated: "It is the position of the guardian ad litem that the trial court correctly found as it did when it considered and applied the child support guidelines when determining that part of the financial orders. The trial court did not exhibit bias against the plaintiff; rather, both parties were given equal opportunities to plead their cases and put on their evidence. Finally, all of the trial court's orders affecting the minor children were made taking into consideration their best interests. The court should also note that the [elder] minor child . . . reached the age of majority on January 17, 2007."

[2] The file contains 217 pretrial motions, of which the plaintiff's appellate counsel deemed more than 100 necessary for inclusion in the printed record on appeal.

2006, the court, *Alvord, J.*, found that the parties' marriage had broken down irretrievably and, accordingly, rendered judgment of dissolution. The court entered various financial orders concerning, inter alia, child support, the sale of the marital residence, attorney's fees and "[a]ny inheritances due [the defendant] based upon the death of her father . . . ." From that judgment, the plaintiff appeals.

I

We first turn to the plaintiff's claim that the court exhibited bias against him at trial and in its memorandum of decision. This claim was not preserved in the trial court, as the plaintiff made no mention of his concern to the court and made no motion either to have the trial judge recuse herself or for a mistrial. We do not ordinarily consider claims that were not specifically raised in the trial court. See *Brehm* v. *Brehm*, 65 Conn. App. 698, 702–703, 783 A.2d 1068 (2001), and cases cited therein. "It is a well settled general rule that courts will not review a claim of judicial bias on appeal unless that claim was properly presented to the trial court via a motion for disqualification or a motion for mistrial." *Gillis* v. *Gillis*, 214 Conn. 336, 343, 572 A.2d 323 (1990). Furthermore, the plaintiff has not sought review of his unpreserved claim under the plain error doctrine. See Practice Book § 60-5; cf. *Cameron* v. *Cameron*, 187 Conn. 163, 168, 444 A.2d 915 (1982) (granting plain error review to claim of judicial bias). As our Supreme Court has instructed, a party seeking review of unpreserved claims under the plain error doctrine must affirmatively request such review. *State* v. *Ramos*, 261 Conn. 156, 171, 801 A.2d 788 (2002). On that basis alone, the plaintiff's claim fails.

Nevertheless, an allegation of judicial bias implicates the basic concepts of a fair trial. "[A]n accusation of prejudice against a judge . . . strikes at the very core

of judicial integrity and tends to undermine public confidence in the established judiciary." (Internal quotation marks omitted.) *Cameron* v. *Cameron,* supra, 187 Conn. 168. Because of the enormity and extent of the allegation levied by the plaintiff in the present case,[3] we invoke our inherent supervisory authority over the administration of justice. See Practice Book § 60-2. On our thorough review of the record and transcripts in this case, we conclude that the plaintiff's allegation is baseless.[4]

The plaintiff first asserts in his brief that "from the very beginning of the trial, the court's language evidenced hostility toward the plaintiff . . ." To support this contention, the plaintiff refers to two comments made by the court, indicating that "[t]his is not good" and that "I'm going with what the defense says." The plaintiff isolates these comments from the context in which they arose. Just before the court made the comments and while the plaintiff was testifying about certain basic predicate facts, the following colloquy occurred between the plaintiff and his attorney:

"[The Plaintiff's Counsel]: Sir, were you married to the defendant in this matter, who is seated here at counsel table?

"[The Plaintiff]: Yes.

"[The Plaintiff's Counsel]: And what was the date of your marriage?

---

[3] Raising a claim of bias on the part of a judge against a particular party is a serious business and should not be undertaken without a sound basis in the record. See rule 8.2 (a) of the Rules of Professional Conduct ("[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge").

[4] Let it be clear that in so concluding, this court has made no finding as to whether counsel for the plaintiff violated rule 8.2 (a) of the Rules of Professional Conduct.

"[The Plaintiff]: Now you're asking me all these real tough questions. Uh, the date. Let's see."

When the plaintiff was unable to come up with a date, and after the court had invited his attorney to refresh the plaintiff's recollection by examining the complaint, the plaintiff asked, "Was it the seventeenth? Am I right on that?" At that moment, the court stated, "This is not good." Shortly thereafter, the defendant offered to stipulate that the date of the marriage was March 20, 1988. The plaintiff and his attorney proceeded to argue between themselves about whether the marriage occurred in 1987, as alleged in the complaint, or 1988, as stipulated by the defendant. The court then stated: "Scrivener's error on the complaint. We're correcting it to March 20, 1988. He doesn't seem to know, and they say it is 1988. So, I'm going with what the defense says." The plaintiff then moved to amend his complaint, and, upon learning that the court already had done so, counsel for the plaintiff thanked the court. To allege bias on the part of the court from that effort to clarify this simple detail is to completely ignore the context in which the comment was made.

The plaintiff then makes the following assertion in his brief: "Early on in the presentation of the plaintiff's case, the court became increasingly intolerant." To support that allegation, the plaintiff quotes the court's statement that "I never anticipated this. My . . . trials in Hartford never. . . went this way yet. . . . I never thought it would . . . ." Once again, the plaintiff ignores the context of the court's statement. Beginning on page thirty-eight of the transcript of the first day of trial and continuing for twenty pages, counsel for the plaintiff laboriously introduced exhibits, one by one. When the defendant's counsel pointed out to the court that this process was unnecessarily time-consuming and in violation of the court's standing orders, the court agreed, making the quoted comment. The court went

on to inform counsel for the plaintiff that "from now on, if you're with me, deal with the exhibits before we start." We cannot conclude that the court exhibited bias toward the plaintiff simply because it asked him to comply with that court procedure.

The plaintiff's remaining allegations of bias on the part of the court are directed at the court's memorandum of decision. We briefly analyze this attack on the court. The plaintiff argues: "In a footnote, the court quotes, referring to the plaintiff, that it is he who has violated a 'social contract' in an earlier divorce about which *the court knows nothing.*" (Emphasis added.) The memorandum of decision indicates that the footnote was not the court's opinion but, rather, a direct quotation from the "assessment of the Sapper family" prepared by psychologist John T. Collins, the custody evaluator. That report was introduced into evidence by the plaintiff as plaintiff's exhibit forty-eight. Thus, it was from the plaintiff's initiative that the court knew the fact quoted.

The plaintiff also complains that the court used strong language in rendering its decision.[5] We are aware of no authority, nor has the plaintiff provided any, indicating that a trial court is prohibited from expressing its factual findings and conclusions of law in strongly worded terms. So long as they are legally and logically correct and find support in the record, the court is free to convey its conclusions in whatever manner it deems appropriate. Although the court must be mindful of its duty to "have the trial conducted in a manner which approaches an atmosphere of perfect impartiality which

---

[5] We note that the plaintiff presents his allegations of judicial bias in language that itself is very provocative. For example, the plaintiff's appellate brief alleges that the court has forsaken "any vestiges of restraint and impartiality" and has "followed its personal feelings in derogation of the evidence."

is so much to be desired in a judicial proceeding"; (internal quotation marks omitted) *State* v. *Echols*, 170 Conn. 11, 13, 364 A.2d 225 (1975), quoting *Glasser* v. *United States*, 315 U.S. 60, 82, 62 S. Ct. 457, 86 L. Ed. 680 (1942); the court remains free to state its ultimate conclusions in strong language when the evidence before it so demands. We carefully have considered each of the plaintiff's allegations as to the language employed by the court in its memorandum of decision. The statements at issue all find support in the evidence presented to and credited by the court. They further reflect the tone of this unfortunate proceeding and pale in comparison to language contained, for example, in Collin's report.[6] We conclude that the court's comments do not reflect actual bias and do not raise a reasonable question of impartiality.

Finally, we emphasize that "[o]ur Supreme Court has criticized the practice whereby an attorney, cognizant of circumstances giving rise to an objection before or during trial, waits until after an unfavorable judgment to raise the issue. We have made it clear that we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial." (Internal quotation marks omitted.) *Fiddelman* v. *Redmon*, 31 Conn. App. 201, 213, 623 A.2d 1064, cert. denied, 226 Conn. 915, 628 A.2d 986 (1993), quoting *Timm* v. *Timm*, 195 Conn.

---

[6] In preparing his assessment of the Sapper family, Collins conducted a total of eighteen interviews of the parties and the minor children over the course of seven months. His thirty-one page report, introduced into evidence by the plaintiff, details the interaction of the family members, their individual histories and personal issues. The report also details voice mail and e-mail messages sent to the defendant by the plaintiff. Offensive language permeates the report. As one of many examples, Collins notes that the plaintiff called the defendant a "fucking cunt" and a "bitch" in the presence of the minor children. Collins' report contains other quotations from the plaintiff and minor children that are even more graphic and profane.

202, 205, 487 A.2d 191 (1985). In the face of such brazen partiality as alleged in his appellate brief, it was incumbent on the plaintiff to properly present that allegation to the trial court at trial via a motion for disqualification or a motion for a mistrial.

## II

The plaintiff next assails several financial orders entered by the court. As to each, we conclude that the court did not abuse its discretion.

"In fashioning its financial orders, the court has broad discretion, and [j]udicial review of a trial court's exercise of [this] broad discretion . . . is limited to the questions of whether the . . . court correctly applied the law and could reasonably have concluded as it did. . . . In making those determinations, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action. . . . That standard of review reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and the attitude of the parties." (Internal quotation marks omitted.) *Sander* v. *Sander*, 96 Conn. App. 102, 105, 899 A.2d 670 (2006). Further, "[i]n distributing the assets of the marital estate, the court is required by [General Statutes] § 46b-81 to consider the estate of each of the parties. . . . General Statutes § 46b-81 (a) provides in relevant part: At the time of entering a decree . . . dissolving a marriage . . . the Superior Court may assign to either the husband or wife all or any part of the estate of the other. . . . Courts are not required to ritualistically recite the criteria they considered, nor are they bound to any specific formula respecting the weight to be accorded each factor in determining the

distribution of marital assets." (Citation omitted; internal quotation marks omitted.) *Mann* v. *Miller*, 93 Conn. App. 809, 812, 890 A.2d 581 (2006).

## A

The plaintiff first claims that the court abused its discretion in fashioning its child support order. Specifically, he alleges that the court ignored a significant change in his economic circumstances due to his "life threatening illness." The plaintiff, however, offered no expert testimony regarding that alleged illness.

The plaintiff also argues that the court improperly relied on his December 6, 2004 financial affidavit when he had filed a more recent one with the court. For two reasons, that claim is problematic. First, we note that the "more recent" affidavit, introduced into evidence as plaintiff's exhibit forty-nine, is not certified. On the certification section of that document, the date is not provided, and neither the affiant nor a notary or commissioner of the Superior Court signed the requisite boxes.

Second, the more recent affidavit avers that the plaintiff had a net weekly loss of $847 in wages, which would amount to an annual loss of more than $44,000. By contrast, his December 6, 2004 financial affidavit listed a net weekly wage of $800. In its memorandum of decision, the court discredited the more recent affidavit. It stated: "The evidence provided at trial, relative to [the plaintiff's] business income and earnings, was vague and not credible." In so concluding, the court compared both affidavits and emphasized that, despite the alleged net weekly loss of $847 in wages, the more recent affidavit listed more than $1300 in weekly expenses. It is well established that "[t]his court will not revisit credibility determinations." *Landry* v. *Spitz*, 102 Conn. App. 34, 49 n.9, 925 A.2d 334 (2007). The court was entitled, in

its role as sole arbiter of credibility, to discredit the plaintiff's unsigned affidavit.

The court was presented with ample evidence, both documentary and testimonial, concerning the plaintiff's earning capacity and economic circumstances, which support its determination. On our review of the record, we perceive no abuse of discretion.

## B

The plaintiff also challenges the court's orders regarding the marital residence. As part of its judgment of dissolution, the court ordered the sale of the marital residence at 1 Vienna Lane in Clinton. Following the sale, the net proceeds were to be distributed as follows. First, $19,000 shall be deposited in the respective college funds of the minor children, a payment to be deducted from the defendant's share of the net proceeds. Second, any outstanding judgment liens, past due expenses and utilities shall be paid from the plaintiff's share of the net proceeds. Third, an additional $10,000 shall be deposited in each of the respective college funds for the minor children. Fourth, the defendant shall receive her $85,000 contribution to the residence and the plaintiff shall receive his $27,000 contribution. Finally, the court ordered that "[o]f the remaining proceeds, if any, and taking into account fault in the breakdown of the marriage, [the defendant] shall receive 80 percent and [the plaintiff] shall receive 20 percent."

On appeal, the plaintiff alleges that "[i]n exorcising [sic] her wrath toward and contempt for the plaintiff, the court has lost sight of the fact that the defendant serially purloined the entirety of her nearing college age children's college funds . . . ." To the contrary, the court made the following factual findings in its memorandum of decision concerning the liquidation of the college funds: "The problems in this marriage began

when [the parties'] children were very young. One of the problems was financial; [the plaintiff] blames [the defendant] for spending family funds on her unsuccessful antiques business. However, their financial stressors actually were apparent much earlier and largely were created by [the plaintiff]. After the birth of their first child, [the plaintiff] controlled the family's finances. He allocated an insufficient weekly sum, in cash, to [the defendant] to pay all the expenses of the household, including the mortgage and all the children's expenses. This weekly sum never increased and was necessarily supplemented by the plaintiff's part-time earnings. When she did not have enough money to cover that week's bills, [the defendant] was told by [the plaintiff that] she could 'earn' extra household cash in exchange for engaging in marital sex. Faced with this alternative, often she took the week's shortfall out of her small inheritance from her grandmother. . . . She then depleted the modest balance remaining in her pension plan. Finally, to cope with the severe household budget deficit [the defendant] opened an antiques business, in March, 2001. When that business failed to generate enough cash to pay the household bills, [the defendant] used periodic withdrawals from [the college funds of the minor children]. . . . Both parents were aware of this invasion of [the] college funds." In his appellate brief, the plaintiff concedes that evidence exists in the record to support the court's factual findings. He argues, however, that "on the entire evidence, this court must be left with the definite and firm conviction that a mistake has been committed." We disagree. The court properly considered the liquidation of the college funds in ordering their replenishment as part of the distribution of the marital property.

The plaintiff also claims that the court improperly considered the issue of fault in awarding the defendant 80 percent of the remaining proceeds of the marital

estate. He is mistaken. General Statutes § 46b-81 (c) requires a trial court to consider various factors in fashioning financial orders in dissolution proceedings, including "the length of the marriage [and] the *causes* for the annulment, dissolution of the marriage or legal separation . . . ." (Emphasis added.) The evidence adduced at trial supports the court's determination that the plaintiff was responsible for the breakdown of the parties' marriage. "In reviewing the trial court's decision, we are mindful that the trial court is accorded wide discretion in a dissolution action in distributing the marital property." *Lopiano* v. *Lopiano*, 247 Conn. 356, 375, 752 A.2d 1000 (1998). We also are mindful of "the sound policy that the trial court has the opportunity to view the parties first hand and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, in which such personal factors such as the demeanor and the attitude of the parties are so significant." (Internal quotation marks omitted.) *Parley* v. *Parley*, 72 Conn. App. 742, 745, 807 A.2d 982 (2002). Those factors often are not fully reflected in the cold, printed record available to us. *Kaplan* v. *Kaplan*, 186 Conn. 387, 391, 441 A.2d 629 (1982). The court did not abuse that discretion in its orders regarding the marital residence.

## C

The plaintiff next claims that the court abused its discretion in ordering him to pay certain attorney's fees. That claim requires little discussion. General Statutes § 46b-62 authorizes the trial court to order payment of attorney's fees in dissolution actions. "Whether to allow counsel fees [under § 46b-62], and if so in what amount, calls for the exercise of judicial discretion. . . . An abuse of discretion in granting counsel fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did." (Internal quotation marks omitted.) *Kunajukr* v. *Kunajukr*, 83 Conn. App. 478, 489, 850 A.2d 227, cert.

denied, 271 Conn. 903, 859 A.2d 562 (2004). In addition to the evidence presented at trial, the court had before it the fact that prior to trial, the plaintiff had filed standing trial management orders that included a witness list containing the names and addresses of fifty-eight individuals and a list of eighty-six proposed exhibits. At trial, the plaintiff called four witnesses. In light of the foregoing, we cannot say that the court abused its discretion in ordering the plaintiff to pay the defendant $5000 in attorney's fees and all fees incurred by the guardian ad litem and attorney for the minor children.

D

The plaintiff's final claim is that the court abused its discretion in ordering that "[a]ny inheritances due [the defendant] based upon the death of her father are her sole property." We repeat that the court "is accorded wide discretion in a dissolution action in distributing the marital property." *Lopiano* v. *Lopiano,* supra, 247 Conn. 375. The record reveals that the defendant's father died on April 26, 2006, more than nineteen months *after* the parties separated and the plaintiff commenced this dissolution action. In addition, the parties presented no evidence to the court concerning the value of the estate, making it improper for the court to consider the estate in its property distribution. See *Krafick* v. *Krafick,* 234 Conn. 783, 792–93, 663 A.2d 365 (1995) (court must value property prior to distribution determination). That fact, considered in tandem with the other evidence presented at trial, persuades us that the court was well within its discretion in entering the aforementioned order.

The judgment is affirmed.

In this opinion the other judges concurred.