WILLIAM MASSEY ET AL. *v.* TOWN OF
BRANFORD ET AL.
(AC 28593)

Harper, Beach and Borden, Js.

154

Argued January 7—officially released June 16, 2009*

* The plaintiffs' motion for reconsideration was granted July 2, 2009, and the decision in *Massey* v. *Branford*, 115 Conn. App. 153, 971 A.2d 838 (2009), is vacated. This opinion has been superseded by *Massey* v. *Branford*, 118 Conn. App. 491, 985 A.2d 335 (2009).

*Dawn Massey,* pro se, and *William Massey,* pro se, the appellants (plaintiffs).

*William H. Clendenen, Jr.,* with whom were *Nancy L. Walker* and, on the brief, *Kevin C. Shea, David S. Doyle* and *Daniel C. DeMerchant,* for the appellees (named defendant et al.).

*Opinion*

HARPER, J. In this consolidated appeal,[1] the plaintiffs, William Massey and Dawn Massey, appeal from the judgment of the trial court rendered following the granting of the motion to enforce a settlement agreement filed by the defendants, the town of Branford, Barbara Neal and Michael Milici, and challenge the denials by the trial court of various motions filed by the plaintiffs. On appeal, the plaintiffs claim that the court (1) abused its discretion by failing to disqualify itself, (2) improperly granted the defendants' motion to enforce the settlement agreement, (3) improperly granted the defendants' motion to strike the plaintiffs' jury claim and (4) improperly denied a series of motions[2] filed by the plaintiffs subsequent to the filing

[1] The plaintiff, Dawn Massey, filed this appeal as a plaintiff-appellant, and the plaintiff, William Massey, filed as a cross appellant. On September 24, 2007, the Masseys filed a motion for permission for the cross appellant to proceed as an appellant. They asserted that they jointly agreed on the issues to be briefed on appeal and wanted to file a single, or joint, brief. On November 20, 2007, this court granted the joint motion filed by the Masseys and consolidated the appeal and cross appeal.

[2] Specifically, the plaintiffs claim that the court improperly (1) denied their motion to reargue the court's granting of the defendants' motion to enforce the settlement agreement, (2) abstained from ruling on the plaintiffs' consolidated motion for reconsideration on the court's granting of the defendants' motion to enforce the settlement agreement and (3) summarily denied the plaintiffs' motion to open and to set aside the judgment and several preappeal motions filed on February 5, 2007.

The preappeal motions included the plaintiffs' motion to preclude Pasquale Cerino's appraisals and their motion to vacate the court's decision to

of the defendants' motion to enforce the settlement agreement. We affirm the judgment of the trial court.

The court found the following facts. "The plaintiffs . . . are taxpayers in the town of Branford. They filed suit pro se against the defendants, challenging the assessment of their property, seeking to invalidate the grand list of the town and for civil penalties pursuant to General Statutes § 12-170. There were also sundry other causes of action which did not survive motions to strike. . . . For the plaintiffs as [pro se litigants], Dawn Massey assumed the lead, demonstrating a remarkable ability to research, learn and synthesize knowledge of legal process and substantive law. The defendants were represented by Howd and Ludorf, and then later in the process, by the Marcus Law Firm as well.

"The trial of this case was set for July 10, 2006. Pursuant to a trial management order the parties were set to meet to go over exhibits. Such a meeting was set for July 3, 2006. At that meeting, Dawn Massey, attorney Shelly Marcus and attorney Daniel C. DeMerchant of Howd and Ludorf met and entered into a written agreement. As a part of the process in arriving at the agreement, Dawn Massey conferred with her husband, William Massey, and gained his approval for the settlement agreement terms, as long as it ended all of the litigation. The defendants' counsel had gained authority for the terms of the settlement agreement from conferences prior to the meeting with the town assessor, Barbara Neal, and during the meeting with the town's first selectman. The settlement agreement was initialed by

---

overrule their objection to a proposed finding of fact, which was summarily overruled, a sixth motion for rectification, a motion for articulation regarding a motion for reconsideration, a motion to correct the memorandum of decision filed October 27, 2006, a motion to correct an order dated January 30, 2007, and a motion to correct the court's findings of fact and judgment.

page and signed after it was read aloud at the July 3, 2006 meeting.

"On July 5, 2006, the plaintiffs in a written pleading entitled 'Updated Case Status Report' [report] notified the court that the parties had come to a settlement agreement. The pleading detailed the specifics of the agreement as it was stated in the written document signed by the parties. The report . . . [provided] that the parties were dealing with 'paperwork necessary to formalize their settlement agreement.' Ironically, the plaintiffs in their report [asked] the court to 'retain jurisdiction over this matter until the defendants [had] fully complied with all terms set forth in the settlement agreement.'

"The parties proceeded to work on and prepare releases to be signed by both sides, though the provision of releases was not a part of the written settlement agreement. The parties hit a roadblock when the plaintiffs sought a release from Trista Clyne, a nonparty witness, and she declined to provide one. The plaintiffs [had] an apprehension that without that release, they [were] exposed to the possibility that Ms. Clyne could initiate a lawsuit against them for a perceived civil wrong emanating from oral or written statements made by the plaintiffs in the course of this litigation. The defendants take the position that this release [was] not necessary to the completion of the settlement agreement."

As a result of the parties' inability to resolve the issue related to whether a release was necessary, the defendants filed a motion to enforce the settlement agreement. In a memorandum of decision filed on October 27, 2006, the court granted the defendants' motion, pursuant to *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 811, 626 A.2d 729 (1993). The court found that the parties

intended to enter into a binding and final agreement terminating all matters in the present litigation. Between November 6, 2006, and January 31, 2007, the plaintiffs filed several motions,[3] which were denied by the court. Thereafter, on January 31, 2007, pursuant to the procedural requirements for a stipulated judgment from a tax appeal, the court solicited the necessary documentation for a finding of value from the parties and then rendered judgment with direction to adjust the values assigned to the real estate, in accordance with the July 3, 2006 settlement agreement of the parties. The matter was continued to February 7, 2007, at which time the court denied additional motions[4] filed on February 5, 2007, by the plaintiffs. This consolidated appeal followed. Additional facts will be set forth as necessary.

I

The plaintiffs first claim that the court abused its discretion by failing to disqualify itself. Specifically, the plaintiffs argue that the court displayed a pattern of unreasonable departures from judicial procedures, which resulted in errors of law and manifested actual bias toward the plaintiffs and partiality toward the defendants and the defendants' counsel. We decline to review this unpreserved claim.

At the outset, "[i]t is a well settled general rule that courts will not review a claim of judicial bias on appeal

---

[3] After the defendants' motion to enforce the settlement agreement was granted on October 27, 2006, the plaintiffs filed a motion to reargue and to vacate further orders entered on October 27, 2006. The remaining motions filed thereafter by the plaintiffs are not at issue in this appeal.

[4] The plaintiffs filed a motion to open and to set aside the judgment and a motion to vacate the summary denial rulings regarding their motion to preclude Pasquale Cerino's appraisals and to vacate the court's decision to overrule their objection to a proposed finding of fact, which was summarily overruled, a sixth motion for rectification, a motion for articulation regarding a motion for reconsideration, a motion to correct the memorandum of decision filed October 27, 2006, a motion to correct an order dated January 30, 2007, and a motion to correct the court's findings of fact and judgment.

unless that claim was properly presented to the trial court via a motion for disqualification or a motion for mistrial." (Internal quotation marks omitted.) *Knock* v. *Knock*, 224 Conn. 776, 792, 621 A.2d 267 (1993); see also *Gillis* v. *Gillis*, 214 Conn. 336, 343, 572 A.2d 323 (1990); *Cameron* v. *Cameron*, 187 Conn. 163, 168, 444 A.2d 915 (1982). "A party's failure to raise a claim of disqualification at trial has been characterized as the functional equivalent of consenting to the judge's presence at trial." (Internal quotation marks omitted.) *McGuire* v. *McGuire*, 102 Conn. App. 79, 83, 924 A.2d 886 (2007). In the present case, the plaintiffs filed two separate motions for disqualification, which were denied by the court, and, therefore, the plaintiffs have preserved a claim of judicial bias for appellate review. They have not, however, briefed any of the grounds alleged in either motion for disqualification.

On January 10, 2007, the plaintiffs filed the first motion for disqualification on the ground that the court departed from judicial procedures. The plaintiffs referred to rulings of the court on several motions in late 2006, following the July 3, 2006 meeting held by the parties, during which the parties discussed terms of a settlement agreement. On January 22, 2007, the plaintiffs filed the second motion for disqualification on similar grounds. The plaintiffs do not claim that the court improperly denied their motions for disqualification. Rather, the plaintiffs have raised new claims of judicial bias for the first time on appeal. The plaintiffs have asserted that the court should have disqualified itself on the basis of procedural discrepancies that occurred prior to the July 3, 2006 meeting held by the parties. Specifically, the plaintiffs refer to several motions they filed, which were denied during late 2005 and early 2006, to demonstrate judicial bias. In addition to the procedural defects, the plaintiffs also assert that the court should have disqualified itself because the

judge should have known of litigation that her immediate family members were involved in against clients of the defendants' counsel.[5]

Our review of the record reveals that the plaintiffs did not distinctly raise the claims of judicial bias mentioned in their briefs before the trial court,[6] and they have not requested any extraordinary level of review of their unpreserved claims. "This court often has noted that it is not appropriate to engage in a level of review that is not requested."[7] (Internal quotation marks omitted.) *State* v. *Marsala*, 93 Conn. App. 582, 590, 889 A.2d 943, cert. denied, 278 Conn. 902, 896 A.2d 105 (2006).

We are mindful of the plaintiffs' pro se status. "[I]t is the established policy of the Connecticut courts to be solicitous of pro se litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the pro se party. . . . Nonetheless, [a]lthough we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *Sakon* v. *Glastonbury*, 111 Conn. App. 242, 258 n.5, 958 A.2d 801 (2008), cert. denied, 290 Conn. 916, 956 A.2d 554 (2009). Accordingly, because the plaintiffs have not requested any extraordinary level of review of their unpreserved claims, we

---

[5] At oral arguments before this court, the plaintiffs acknowledged that this claim was never distinctly raised to the trial court.

[6] See, e.g., *State* v. *Constantopolous*, 68 Conn. App. 879, 883, 793 A.2d 278 (this court declined to review claim not raised in motion to correct because claim raised for first time on appeal), cert. denied, 260 Conn. 927, 798 A.2d 971 (2002); *Caltabiano* v. *Phillips*, 23 Conn. App. 258, 265–66, 580 A.2d 67 (1990) (this court declined to review claim not argued in motion to dismiss because claim raised for first time on appeal).

[7] Contra *Sapper* v. *Sapper*, 109 Conn. App. 99, 103, 951 A.2d 5 (2008) (this court reviewed unpreserved claims under inherent supervisory powers absent plaintiff's request for plain error review because of enormity and extent of plaintiff's allegations).

decline to afford review to these newly raised claims of judicial bias.[8]

## II

Next, the plaintiffs claim that the court improperly enforced the settlement agreement without first ascertaining whether the parties came to an identical understanding of what constituted a complete settlement agreement.[9] Specifically, the plaintiffs argue that because documents, such as a release by the parties, were necessary additions to formalize the settlement agreement, the settlement agreement on its own was never final or complete on July 3, 2006. The plaintiffs argue that the court improperly enforced the settlement agreement. We disagree.

The parties do not dispute the settlement terms that they agreed to at the July 3, 2006 meeting. In fact, the plaintiffs notified the court on July 5, 2006, that the parties came to a settlement agreement and specified to the court the terms agreed upon. The issue raised by the plaintiffs involves additional terms relating to

---

[8] The plaintiffs' claims involve alleged procedural discrepancies, such as the court's departure from the scheduling order's deadlines or filing requirements, some of which the plaintiffs argue resulted in improper rulings. We note, however, that even if we were to consider the plaintiffs' claims, it nevertheless is well settled that adverse rulings do not amount to evidence of judicial bias. See *Burton* v. *Mottolese*, 267 Conn. 1, 49–50, 835 A.2d 998 (2003), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004). "Adverse rulings against a litigant, even if erroneous, are insufficient to establish a judge's bias or prejudice and are not grounds for disqualification. Previous rulings of a trial judge which are subject to correction on appeal may not form a basis for recusal. *Alleged errors of law or procedure are legal issues subject to appeal and are not grounds for disqualification.*" (Emphasis added.) 46 Am. Jur. 2d 264, Judges § 147 (2006); see also *Bieluch* v. *Bieluch*, 199 Conn. 550, 552–53, 509 A.2d 8 (1986). Accordingly, we would have found no merit to the plaintiffs' claim of judicial bias.

[9] Although the plaintiffs' claims can be viewed as distinct and separate, our consideration of the second claim regarding the enforcement of the settlement agreement necessarily implicates their third claim, and consequently, we will address the plaintiffs' second and third claims together.

release documents that were intended to formalize and to complete the settlement agreement. The plaintiffs assert that the settlement agreement was not complete because the necessary parties had to sign release documents to end all litigation. The defendants assert that the release documents were incidental to the already completed and agreed on terms of the settlement agreement. The court found that the parties worked on release documents after the settlement agreement was created, although the written settlement agreement contained no provision for releases therein. The court further found that neither party made the undisputed settlement agreement contingent on other matters to be resolved at a later date. It then enforced the settlement agreement, under *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, supra, 225 Conn. 811.[10] To address this issue, we will refer to *Viera* v. *Cohen*, 283 Conn. 412, 927 A.2d 843 (2007).

In *Viera*, our Supreme Court distinguished the meaning of the terms "settlement" and "release." "A settlement is a legally enforceable agreement in which a claimant agrees not to seek recovery outside the agreement for specified injuries or claims from some

---

[10] "A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous. . . . Agreements that end lawsuits are contracts, sometimes enforceable in a subsequent suit, but in many situations enforceable by entry of a judgment in the original suit. A court's authority to enforce a settlement by entry of judgment in the underlying action is especially clear where the settlement is reported to the court during the course of a trial or other significant courtroom proceedings." (Citations omitted; internal quotation marks omitted.) *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, supra, 225 Conn. 811. "Summary enforcement is not only essential to the efficient use of judicial resources, but also preserves the integrity of settlement as a meaningful way to resolve legal disputes. When parties agree to settle a cause, they are effectively contracting for the right to avoid a trial. . . . We hold that a trial court may summarily enforce a settlement agreement *within the framework of the original lawsuit as a matter of law* when the parties do not dispute the terms of the agreement." (Citation omitted; emphasis added.) Id., 812.

or all of the persons who might be liable for those injuries or claims. . . . It is well established that, to be a legally enforceable agreement, a settlement must be supported by consideration. . . . Its goal is to further finality and to avoid the costs and uncertainties of protracted litigation." (Citations omitted; internal quotation marks omitted.) Id., 427. Furthermore, "[i]t involves an agreement that a *substituted performance* is acceptable instead of what was previously claimed to be due; thus, each party yields something and agrees to eliminate both the hope of gaining as much as he previously claimed and the risk of losing as much as the other party previously claimed." (Emphasis added.) 15A Am. Jur. 2d 728, Compromise and Settlement § 1 (2000).

"A release is an agreement to give up or discharge a claim. . . . It terminates litigation or a dispute and [is] meant to be a final expression of settlement . . . . A release acts like a contract and, as with any contract, requires consideration, voluntariness and contractual capacity." (Citations omitted; internal quotation marks omitted.) *Viera* v. *Cohen,* supra, 283 Conn. 427–28. "[R]eleases and settlements . . . represent a surrender of a cause of action, perhaps for a consideration less than the injury received . . . but, nevertheless, a surrender pursuant to an agreement. . . . An agreement is [t]he union of two or more minds in a thing done or to be done; a coming together of parties in opinion or determination . . . . Thus, a settlement and release reflect concerted behavior. . . . [and] are agreements that generally go hand in hand." (Citations omitted; internal quotation marks omitted.) Id., 428–29.

*Viera* demonstrates that although settlements and releases are agreements that enforce or strengthen each other's purpose to terminate litigation, one is not required to enforce the other because each agreement

calls for separate actions and consideration. A settlement agreement focuses on terminating present ongoing claims in a cause of action by the substitution of some performance agreed on by both parties, and a release focuses on terminating a right to enforce or pursue claims available in a cause of action.

In the present case, there was no issue of fact concerning the terms of the settlement agreement as written on July 3, 2006. Indeed, the parties do not dispute that the terms of the settlement agreement were clear and unambiguous. Notwithstanding the additional documents that the parties did not agree on, such as the release, the settlement agreement, alone, was enforceable. "The test of disputation . . . must be applied to the parties at the time they entered into the alleged settlement. To hold otherwise would prevent any motion to enforce a settlement from ever being granted." *DAP Financial Management Co.* v. *Mor-Fam Electric, Inc.*, 59 Conn. App. 92, 97–98, 755 A.2d 925 (2000). Therefore, we conclude, pursuant to *Audubon Parking Associates Ltd. Partnership*, that the court properly enforced the undisputed terms of the settlement agreement.

Further, for the reasons we have set forth, we conclude that we need not consider the merits of the plaintiffs' third claim because the court properly enforced the settlement agreement. As a result, a review of the court's denial of a motion relating to a jury trial would provide no practical relief to the plaintiffs because the litigation between the parties was terminated properly. The claim, therefore, is moot,[11] and we dismiss this portion of the appeal.

---

[11] See *Wilcox* v. *Ferraina*, 100 Conn. App. 541, 547–48, 920 A.2d 316 (2007) ("Mootness is a threshold issue that implicates subject matter jurisdiction, which imposes a duty on the court to dismiss a case if the court can no longer grant practical relief to the parties. . . . Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition of affairs between the parties. . . . [T]he existence of an actual controversy is an essential requi-

## III

Last, the plaintiffs claim that the court improperly denied a series of motions they filed subsequent to the filing of the defendants' motion to enforce the settlement agreement. We decline to review this claim, however, because it is briefed inadequately. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Taylor* v. *Mucci*, 288 Conn. 379, 383 n.4, 952 A.2d 776 (2008). In the present case, the plaintiffs fail to cite any legal authority or to provide an analysis of legal authority with regard to their claim to support their position. We therefore decline to review this claim.

The appeal is dismissed with respect to the plaintiffs' jury trial claim. The judgment is affirmed.

In this opinion the other judges concurred.

site to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." [Internal quotation marks omitted.]).